Meyer Winer, Appellee, v. Joseph Eckerling and Max
Eckerling, Trading as Universal Overall Company
Appellants.

Gen. No. 42,813.

Opinion filed June 16, 1944.

RUSS & RAWSON and MAYER GOLDBERG, both of
Chicago, for appellants; MAYER GOLDBERG, of Chicago,
of counsel.

A. CHARLES LAWRENCE and GORDON BAZELON, both of
Chicago, for appellee; A. CHARLES LAWRENCE, of
Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the
court.

Plaintiff, Meyer Winer, a former employee of de-
fendants, Joseph Eckerling and Max Eckerling, doing
business as Universal Overall Company, brought this

action against them under the Fair Labor Standards Act to recover overtime wages claimed to be due him. The court tried the case without a jury and found that there was due plaintiff from defendants $142.82 as overtime wages from October 24, 1938 to April 1, 1940 and in addition thereto an equal amount as liquidated damages and $100 attorney's fees as provided by said act. Judgment was entered against defendants for $385.64, from which they appeal. Judgment was also entered in favor of plaintiff on defendants' counterclaim for $300.

Section 207 (a) of the Fair Labor Standards Act (29 USCA sec. 201, *et seq.*), which became effective October 24, 1938, provides as follows:

"Sec. 207. Maximum hours

"(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Section 216 (b) of said act provides:

"Sec. 216. Penalties; civil and criminal liability

" . . .

"(b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an ad-

ditional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.''

Plaintiff was employed by defendants from May 1936 to January 1941. In 1937 his salary was raised to $35 a week on a straight weekly basis. Thereafter he received a salary of $35 a week until April 1, 1940. Plaintiff's claim for overtime wages covers two periods. The first was from October 24, 1938, the effective date of the Fair Labor Standards Act, to October 24, 1939. During this period the act provided for a workweek of forty-four hours and for overtime compensation of not less than one and a half times the regular hourly rate of pay. Plaintiff worked 51 hours a week and was paid a salary of $35 a week. The second period was from October 24, 1939 to April 1, 1940. During this period the act provided for a workweek of 42 hours with compensation fixed at the same rate as above for overtime work and plaintiff worked 48½ hours a week and was paid a salary of $35 a week.

Defendants contend that they are not liable to plaintiff for any unpaid overtime compensation because ''he was paid on an hourly basis with a weekly guaranty'' and that ''this arrangement complied in all respects with the Fair Labor Standards Act.''

Plaintiff's position is that defendants continued to pay him a straight weekly salary of $35 after the act went into effect, regardless of the number of hours he worked and without any agreement as to his hourly

rate of pay, and that they are liable to him for 7 hours a week unpaid overtime compensation from October 24, 1938 to October 24, 1939 and for 6½ hours a week unpaid overtime compensation from October 24, 1939 to April 1, 1940.

Defendant, Joseph Eckerling, testified that when the act went into effect he told Jack Feinstein defendants' bookkeeper, "to follow it out and carry it out, and he was the one to put down the ruling, in columns the hours and the wages . . . the new ruling, the hours and salaries" and that "an hourly rate of pay was fixed at the time when the act first went into effect."

Jack Feinstein testified in substance with reference to the first period heretofore mentioned that when the .act went into effect he had a conversation with plaintiff in which he told him that thereafter he would be paid at the rate of 63 cents an hour; that he would work 51 hours a week; that "at that hourly rate of pay and figuring overtime pay for 7 hours a week at the rate of 94½ cents an hour his weekly pay would amount to slightly less than $35 but that he would be guaranteed and paid $35 a week;" that he would be paid for additional overtime work when the amount earned exceeded his guaranteed salary of $35 a week; and that plaintiff agreed to this arrangement. Feinstein testified further that he had another conversation with plaintiff in October 1939, when the 42 hour workweek went into effect, and a similar arrangement was made, except that it was agreed that plaintiff's hourly rate of pay would be 67 cents and that he would work 48½ hours a week.

Such an arrangement as defendants claim they made with plaintiff as to his hourly rate of pay, overtime compensation and weekly salary guaranty was approved in *Walling v. A. H. Belo Corp.*, 316 U. S. 624, where the court said at p. 634: "But the guaranty contract in this case carries out the intention of the

Congress. It specifies a basic hourly rate of pay and not less than time and a half that rate for every hour of overtime work beyond the maximum hours fixed by the act.''

However, plaintiff denied that defendants made any agreement or arrangement with him as to an hourly rate of pay or a guaranteed weekly salary for the two periods in question and he stated that the first time Feinstein or anybody else connected with defendants mentioned an hourly rate of pay for him was on April 1, 1940, when Feinstein said, ''We'll continue to work the same hours but it comes to $35.19 on a $.68 basis.'' Furthermore the testimony presented in defendants' behalf as to the agreements they claim to have made with plaintiff in October 1938 and October 1939 is completely refuted by their own records. There is not a single entry therein as to the number of hours worked by plaintiff on any day prior to April 1, 1940. Neither is there any entry of an hourly rate of pay for plaintiff prior to April 1, 1940. If defendants considered that their method of paying plaintiff's salary from October 24, 1938 to April 1, 1940 complied with the Fair Labor Standards Act, it is difficult to understand why they abandoned such method and paid his wages in strict compliance with the act subsequent to April 1, 1940.

Defendants, having paid plaintiff a straight weekly salary of $35 during the entire time involved herein and having failed to enter into an agreement with him as to his basic hourly rate of pay and to pay him not less than time and one half that rate for every hour he worked over and beyond the maximum hours fixed by the Fair Labor Standards Act, were clearly guilty of violating the provisions of section 207 (a) of that act. The method by which the trial court computed plaintiff's unpaid overtime wages is not questioned and its finding that defendants owed him $142.82 in overtime wages was warranted by the evidence.

Defendants made a payment of $300 to plaintiff on December 31, 1940 under circumstances hereinafter shown. They counterclaimed for that amount and contend that "any amount that might be found due plaintiff should be credited against the advance given plaintiff on December 31, 1940."

Bonuses were paid to plaintiff by defendants at the end of the years 1936, 1937, 1938 and 1939 in the respective amounts of $75, $100, $150 and $250. On December 31, 1940 defendant Joseph Eckerling paid plaintiff $300. The evidence is conflicting as to whether this payment was made as a bonus for the year 1940. As to the nature of this payment, Joseph Eckerling testified, "I called in Mr. Winer and told him we don't give any bonuses this year. He asked me why. I said because the Wage and Hour Division took away our records to check the wages and hours and in case they assess anything, we don't want to be penalized twice. All I can do is give you a loan, if you have anything coming you are going to deduct from this loan. So he said it was O. K. and that was that." Eckerling also testified that he told plaintiff "don't worry about it" and that he "didn't have any intention to sue him for it or anything." Jack Feinstein, defendants' bookkeeper testified that he was present and heard Joseph Eckerling tell Winer, "We are not going to give any bonuses this year . . . I want to give you a loan of $300.00, but in case the Department finds that I owe you some money, we are going to charge off against the loan the amount they are going to find due you;" and that "our attorney recommended no bonuses be paid to anybody and if we want to give them money to give them a loan."

Winer testified: "I was called into the office and Mr. Eckerling handed me a check for $300.00 and I said, 'Mr. Eckerling, does this represent the bonus for the year,' and he said 'No' that their books were being checked by the Wage and Hours and until they knew what they were going to do with them, that was all I

would get, but I would get more later, and I objected . . . and he said that he couldn't do anything until the settlement was made with the Wage and Hours, but that I would get more, so I said that if that was the way it was that I would take it, and then he said, 'Here, sign this paper' and I looked at the paper, and it said 'Loan' and I asked him why I should sign a loan and be liable for the $300.00, and he said not to worry about the paper, that it wasn't a loan but something they had to have to protect themselves with the Wage and Hours pending their decision, and I said that the bonus wasn't enough, and I wouldn't accept it . . . he said that I had my bonus as far as the $300.00 was concerned and not to worry about the note or loan, and that after they settled with the Wage and Hours that I would get more, to forget the signing of that note, so I took the money.''

When plaintiff received the $300 on December 31, 1940, he signed a memorandum on one of defendants' letterheads, to which he referred in his testimony and which reads as follows: ''To Whomever It May Concern: I hereby acknowledge receipt of loan in the amount of $300.00.'' According to Feinstein, immediately thereafter he opened a ledger account for plaintiff and entered therein a debit of $300 against him as of December 31, 1940. Feinstein testified that shortly prior to May 1941 defendants were advised by the Wage and Hour Division that plaintiff was entitled to recieve overtime compensation of $174.28 for the period from October 24, 1938 to October 24, 1940, and that on May 1, 1941 plaintiff's loan account was credited $174.28, the amount assessed against defendants for overtime compensation due him.

Whether the $300 received by plaintiff from defendants on December 31, 1940 was paid to him as a bonus presented a question of fact. The trial court found that the $300 was paid as a bonus and this finding, unless it was against the manifest weight of the evidence, is conclusive as to defendants' instant contention that

they are entitled to a credit of $300 against their liability for violating the provisions of the Fair Labor Standards Act.

It is stated in defendants' reply brief that "plaintiff himself admitted that he was told that this payment was not a bonus and plaintiff so accepted it." We do not think that plaintiff's testimony is susceptible of any such interpretation. He did not state that he understood that the payment was not a bonus when he accepted it. He testified in effect that when he was handed the check for $300 on December 31, 1940, he understood that same was being given to him as a bonus and he questioned the amount thereof; that Eckerling told him that because defendants' books were being checked by the Wage and Hour Division that was all the bonus he would get at that time but that he would get more later; and that about the middle of January 1941 he asked Eckerling what he was going to do about the additional bonus promised him and he was discharged. In considering the weight of the evidence and the credibility of the witnesses, the trial court undoubtedly deemed it significant that defendants had paid bonuses to plaintiff for the four years preceding 1940 in progressively increasing amounts. It must also have appeared significant to the trial court that Joseph Eckerling told plaintiff when he requested his signature on the aforementioned memorandum that "he didn't have any intention to sue him for it" and not to "worry about it."

It was conceded upon the trial that, although defendants designated the payment of the $300 to plaintiff as a "loan" in the aforesaid memorandum and in their ledger, it was not in fact a loan. It is true that Joseph Eckerling and defendants' bookkeeper testified that the $300 was paid to plaintiff with the understanding that defendants were entitled to a credit against same for any unpaid overtime compensation they might thereafter be required to pay him. However, the trial judge

saw the witnesses and heard them testify and was in a much better position than we to determine their credibility. We are impelled to hold that his finding that the $300 was paid as a bonus was not against the manifest weight of the evidence.

Since the $300 was paid to plaintiff as a bonus, it belonged to him and no liability thereafter assessed against defendants for his unpaid overtime compensation could be charged against it. In our opinion the trial court properly found that plaintiff was entitled to recover from defendants $142.82 for unpaid overtime compensation, an additional equal amount as liquidated damages and an attorney's fee of $100 under section 216 (b) of the Fair Labor Standards Act. The foregoing items amount in the aggregate to $385.64.

For the reasons stated herein the judgment of the municipal court of Chicago for $385.64 in favor of plaintiff and against defendants is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.