**BLACK et al. v. ROLAND ELEC-
TRICAL CO.**

Civ. No. 2506.

District Court, D. Maryland.

Oct. 4, 1946.

Paul Berman and Theodore B. Berman, both of Baltimore, Md., for plaintiffs.

Nyburg, Goldman & Walter and David S. Sykes, all of Baltimore, Md., and O. R. McGuire, of Washington, D. C., for defendant.

COLEMAN, District Judge.

This is a suit for unpaid overtime compensation alleged to be due the plaintiffs by the defendant, and also for an additional equal amount as liquidated damages and for counsel fee, brought under Section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b).

This litigation originated in this Court by a suit to enjoin alleged violations of the Fair Labor Standards Act brought by the Administrator of the Wage and Hour Division, United States Department of Labor,

against the present defendant, the Roland Electrical Company, which is a corporation engaged in Baltimore in the business of buying and selling new and used electrical motors of various types; repairing, reconditioning and rebuilding used motors, and installing and repairing private, commercial and industrial wiring systems. After due hearing, at which extensive testimony was heard, this Court held that the defendant was not engaged in commerce within the meaning of the Fair Labor Standards Act, and also that defendant was exempt from the operation of that Act because engaged in "a retail or service establishment". See Walling v. Roland Electrical Co., 54 F.Supp. 733. On appeal to the Court of Appeals for this Circuit, the aforementioned holdings of this Court were reversed. See 146 F.2d 745. Thereupon, the defendant petitioned the Supreme Court for and was granted a writ of certiorari. See 325 U.S. 849, 65 S.Ct. 1566, 89 L.Ed. 1970. On January 28, 1946, the Supreme Court affirmed the Circuit Court of Appeals. See 326 U.S. 657, 66 S.Ct. 413. Meanwhile, that is, on March 13, 1945, while the mandate of the Circuit Court of Appeals was stayed pending defendant's application to the Supreme Court for a writ of certiorari and before that writ had been granted, the plaintiffs filed a suit in this Court against the defendant to recover unpaid overtime compensation and for additional liquidated damages and counsel fees alleged to be due them pursuant to Section 16(b) of the Act, as a result of the decision of the Circuit Court of Appeals. Disposition of this suit was postponed pending the ultimate action of the Supreme Court, which, as above stated, in due course affirmed the Circuit Court of Appeals.

The defendant has answered the plaintiffs' complaint, denying that any of the plaintiffs have been underpaid by it under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. There is no dispute over the hourly rates at which the plaintiffs were entitled to be paid by the defendant, or that the plaintiffs worked overtime as defined by the statute. Issue was joined by the parties on the two following points, and a determination of the

exact amount, if any, to which each plaintiff might be entitled, has been deferred, pending a decision of these two points: (1) Did the defendant violate the provisions of Section 7 of the Fair Labor Standards Act, 29 U.S.C.A. § 207, in applying the amounts actually paid the plaintiffs in excess of the requirements of that section in some weeks, as a credit against payments in other weeks when compensation for overtime did not, in fact, equal the amounts prescribed by that section; and (2) was the defendant justified, in determining the amount of overtime compensation due the plaintiffs under the Act, in deducting from such amounts regular year-end bonuses paid to the plaintiffs?

The present suit covers the period from October 24, 1940 to January 10, 1945, during some part of which all of the present plaintiffs were employed by the defendant. The following is an accurate, brief description of defendant's employment practices as they affected the plaintiffs during the overall period in question, which give rise to the two questions, above stated, here in issue: Irrespective of the total hours worked in any work-week, defendant paid time and a half for all time worked in excess of eight hours in any one week-day and in excess of four hours worked on Saturday, and also time and a half for all time worked before or after the regular working hours of any given work-day. In other words, at times it was customary for the employee to work after 5 o'clock on regular week-days; after 12 o'clock, noon, on Saturdays and before or after regular working hours. For all work during such periods, plaintiffs were paid one and one half times their regular wage. As a result, the wages that a given individual received in some weeks was actually in excess of those prescribed by the Act, and in other weeks, it was less.

It was also the practice of the defendant, in the year 1941 and each succeeding year, to pay its employees a bonus amounting to 5% of his gross pay, determined as of the end of November of each year. On the pay-day preceding Christmas, each employee was given a company check for such bonus, less social-security and withholding tax. This was a voluntary payment on the part of the defendant, no previous arrange-

ment having been entered into between the defendant and its employees with respect to the payment of any bonus.

We will consider the two questions at issue in the order in which they have been above stated and, therefore, first, the question whether the defendant violated the Act in applying, as compensation for overtime work, the amounts it paid the plaintiffs in some weeks in excess of the statutory requirement, as a credit against payments in other weeks which did not equal the statutory requirement.

█ While there appears to be no reported decision which interprets Section 7 of the Fair Labor Standards Act when applied to a state of facts precisely like those here involved, nevertheless, in view of the extensive interpretations which have been given to that section, in dealing with other and not unrelated situations, by the Supreme Court and the Circuit Court of Appeals for this Circuit, as well as by other Federal Courts, we believe from those interpretations we are required to rule that the defendant may not make the credits as proposed.

██ A basic principle held to underlie Section 7 is that the week is the inflexible work unit. See Overnight Motor Transportation Co. Inc. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 26. As was said in the first of these cases (316 U.S. 572, at page 579, 62 S.Ct. 1216, at page 1221, 86 L.Ed. 1682): "Neither the wage, the hour nor the overtime provisions of sections 6 and 7 on their passage spoke specifically of any other method of paying wages except by hourly rate. But we have no doubt that pay by the week, to be reduced by some method of computation to hourly rates, was also covered by the act. It is likewise abundantly clear from the words of section 7 that the unit of time under that section within which to distinguish regular from overtime is the week." Also, in the same decision it was declared to be basic by the provisions of both sections 6 and 7 of the Act that they were designed to require payment for overtime at time and a half the regular pay where that pay is above

the statutory minimum, as well as where equal to it. 316 U.S. 572, at page 578, 62 S.Ct. 1216, at page 1220, 86 L.Ed. 1682. See also Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 427, 65 S.Ct. 1242, 1250, 89 L.Ed. 1705; Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 1250, 89 L.Ed. 1711. Likewise, it necessarily follows that the Act requires prompt payment at the end of each week to the employee of the amounts then due him, Rigopoulos v. Kervan, 2 Cir., 140 F.2d 506, 151 A.L.R. 1126, as a corollary of which it is now established law that the employee may not deprive himself of full compensation according to the express provisions of the Act, prior to a judicial determination of his rights thereunder, by any agreement of compromise and settlement, even though entered into in all good faith. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296; D. A. Schulte, Inc. v. Gangi, 66 S.Ct. 925; Guess v. Montague, 4 Cir., 140 F.2d 500.

As a result of the aforegoing, we believe this Court is required to hold, inequitable as it may seem, that the present contention of the plaintiffs and not that of the defendant must prevail. Let us clarify the precise factual situation by the following illustration: According to its general pay policy, the defendant company works its employees eight hours a day for five days each week, from Monday through Friday, and for four hours on Saturday, or a total of forty-four hours per week. Also, in accordance with its general pay policy, the defendant company pays its employees time and one half for all hours worked before or after the normal working hours, regardless of the number of hours that the given employee may have worked in the given week. Suppose then, that one of the plaintiffs in a given week has worked forty hours, four hours of which were after the close of the regular work day, and his hourly rate of pay is 50¢. The defendant company has figured the plaintiff's wages under the above circumstances as amounting to $21 for the week, computed as follows: For 36 hours at 50¢ an hour, $18 and for four hours at 75¢ an hour, $3. Since, as is undisputed, according to the requirements of the Act the plaintiff would

be entitled to only $20, that is to say, for forty hours work at 50¢ an hour, there being no statutory overtime, there can be no question that in so far as the strictly statutory obligation to pay is concerned, apart from the defendant's contractual obligation to the plaintiff, the defendant has actually made to the plaintiff an excess payment of $1. However, this is not the extent of defendant's contention in the present case. It goes further and contends that it is not violating the Act if it treats all of the various weeks during which the given plaintiff has worked, as a whole, balancing the amounts of statutory overpayments in some weeks against statutory under-payments in others, the result being that under such computation plaintiff has not been under-paid but over-paid. However, this argument, equitable as it appears to be, independently of the Fair Labor Standards Act, is directly contrary to the now well-established interpretation to be given to the Act arising primarily, as we have seen, from the basic theory that makes the individual week completely inviolate and inflexible as the unit of work.

While administrative interpretations of laws such as the Fair Labor Standards Act are not controlling unless consonant with such laws when interpreted in the light of our constitutional requirements, the Wage and Hour Division of the United States Department of Labor, which is charged with the administration of the Fair Labor Standards Act, has rendered interpretations which we believe to be correct, and in conformity with our understanding of the Supreme Court's holdings. For example, in that Division's Interpretative Bulletin No. 4. (the latest) we find the following statements:

Paragraph 5. "The act takes a single workweek as its standard and permits no averaging of hours over two or more weeks. Thus, when an employee works 30 hours one week and 50 hours the next, he must receive time and one-half overtime compensation for the 10 hours over 40 worked the second week, even though the average number of hours worked in the two weeks is 40."

Paragraph 29. "It must be remembered that the Fair Labor Standards Act takes a single workweek as its standard and permits no averaging of hours over two or more weeks. For the purposes of the act each week stands alone. Time and a half overtime compensation must be paid the employee for all hours which he works in excess of 40 hours in a single workweek. The pay period need not, however, coincide with the workweek. Thus, there is no objection if the pay period is biweekly, semimonthly, or monthly. But the amount of compensation due the employee at each pay period must be computed on the basis of a single workweek."

Paragraph 43. "In other words, overtime compensation earned in a particular workweek must be paid at the regular pay period in which such workweek ends. Payment for a workweek, however, may not be postponed beyond the pay period in which it ends."

In this same Bulletin, in approving the basic principle of a so-called prepayment plan common with some industries, we find the following:

Paragraph 53: "Though overtime compensation due an employee must normally be paid at the time of the employee's regular pay period, there is no objection if the employer pays overtime compensation to become due to an employee in advance. This is the basic principle of the prepayment plan."

Paragraph 57: "It will be noted that only credits to the employer will be carried over beyond the pay period; credits to the employee, i. e., overtime compensation due the employee, will not be carried over beyond the pay period to be consumed by subsequent employer advances, but will be paid in cash at the pay period. In this way the employer will never be indebted to the employee."

Defendant's counsel contends that by Paragraph 69 of this same Interpretative Bulletin No. 4, the Wage and Hour Division has applied Section 7 in such a manner, to cases where a union contract or other agreement between an employer and his employees calls for the payment of

overtime or other special compensation not required by the Act, as to permit the practice for which defendant is contending in the present suit. It is true that the basic question here presented to us, when reduced to its simplest terms, is whether or not overtime wages, paid by reason of a special arrangement or contract between employer and employee, can be treated as overtime payment under the Fair Labor Standards Act. However, it is to be noted that the ruling of the Wage and Hour Division last above referred to, upon which defendant relies, does not either expressly or impliedly cover, or purport to cover, the question which we now have under consideration, namely, the combining of weekly balances of debits and credits in one final accounting with the employee, but merely the balancing of the computation, in terms of the Act, of hours worked during, but not beyond, one given week, against the computation of wages due in terms of a union agreement or other agreement, for the same period. We agree with, and here adopt, the ruling thus laid down by the Wage and Hour Division as the one that must be applied in the present case where the facts, for any one given week, are similar to those covered by this ruling.

We come, finally, to the one remaining question at issue, namely, whether it is permissible under the Act for the defendant to deduct from the amounts due as overtime compensation, the regular year-end bonuses paid to the plaintiffs.

In view of our conclusion on the first point here at issue, it must be obvious that the application of the same principle to the bonus question requires that we answer it likewise in favor of the plaintiffs. In the present case, the bonus was paid annually on the basis of 5% of the wages which the recipient had earned during the last eleven months. This fact, coupled with the fact that these bonus payments were carried on the books of the defendant company as employee compensation; that the company deducted them in computing its income, withholding and social security taxes, is stressed by the company as supporting its right to apply these bonuses as part of its obligation to the present plaintiffs under the Fair Labor Standards Act.

We are not impressed with this argument. It is true that incentive bonuses, paid in addition to regular, guaranteed base pay, are to be taken into account in the computation of the statutory regular rate for the purpose of determining overtime under the Act. See Walling v. Harnischfeger Corp., supra; Walling v. Alaska Pacific Consol. Min. Co., 9 Cir., 152 F.2d 812; Walling v. Stone, 7 Cir., 131 F.2d 461; Carleton Screw Products Co. v. Fleming, 8 Cir., 126 F.2d 537, certiorari denied 317 U.S. 634, 63 S.Ct. 54, 87 L.Ed. 511. However, such a situation is not analogous to that in the present case. There, the bonuses were paid currently in direct relation to the piece-work being performed by the employee, as an incentive to a greater volume of production. In the present case, the bonuses, while scaled according to the employees' annual income, were really in the nature of an outright gift, as evidenced by the testimony, uncontradicted, to the effect that these payments had been instituted in 1941 in place of Christmas gifts, previously made by the defendant to its employees, in the form of a turkey or some other gift.

Defendant's counsel argues that this Court should follow the decision in Corey v. Detroit Steel Corp., 52 F.Supp. 138, a decision of the District Court for the Eastern District of Michigan, Southern Division, decided in 1943 (unappealed), where it was held that a bonus to an employee was properly to be considered as compensation for his services in determining the amount recoverable by him for overtime compensation under the Fair Labor Standards Act. The Court said (page 141): "A payment made to an employee by an employer may be compensation for services, even though made voluntarily and without legal obligation, and where it appears from consideration of all the surrounding facts and circumstances that a bonus was not a gift of the employer to the employee, the same should be considered as compensation for services. Bass v. Hawley, 5 Cir., 62 F.2d 721; Willkie

v. Commissioner, 6 Cir., 127 F.2d 953; Thomas v. Commissioner, 5 Cir., 135 F.2d 378."

In the Corey case, the employee was a superintendent of maintenance in defendant's steel mill, although he was found by the Court, for a part of the employment period involved in the case, to have been in the non-exempt class under the Act, because a very substantial proportion of the total work which he then did was of the same nature performed by non-exempt employees.

It is to be noted that the cases upon which the Court, in the Corey case, relies (included in the above quotation from the Court's opinion) are tax cases. In the first of these, Bass v. Hawley, a single payment was made to an employee who had been the general auditor of a railroad company for twenty-two years. There were numerous declarations by the company's directors that the sum so paid was additional compensation, in recognition of long and faithful service. The Court held that the payment was not a gift but compensation for services rendered, and therefore subject to tax as income to the employee. In Willkie v. Commissioner, a single payment in the amount of $15,000 was made to the taxpayer upon his resignation as vice president and director of a corporation. Its Board of Directors described the payment as "in appreciation of services rendered" [127 F.2d 953, 955], and claimed the payment as a deduction on the corporation's tax return. The payment had been measured by the taxpayer's salary. The Court held that inasmuch as the corporation itself treated the sum as a bonus or additional compensation, it was not to be considered as a gift. In the last of the three cases relied upon in the Corey decision, namely, Thomas v. Commissioner, the taxpayer had been employed by a corporation as its secretary-manager. In 1936, after the Bureau of Internal Revenue had advised the taxpayer and the corporation that a deduction of more than $15,000 for salary and commissions paid to an executive of the corporation was not permissible, the corporation placed the taxpayer, whose salary and commissions had already ex-ceeded $26,000, on a straight $15,000 annual salary basis and then voted him $25,000 as a "gift in recognition of his able and successful direction of this corporation," [135 F.2d 378, 379] during the past seven years. The Court held that the payment was not a gift but additional compensation in the form of a bonus, as indicated by the declaration of the corporation itself.

Reference to other tax decisions of like nature, of which there is a great wealth in the reports, seems unnecessary because not germane to the precise question before us for decision. It may be conceded that the great majority of such decisions support the conclusions reached in the three cases just reviewed, on the ground that the payment of an additional sum by an employer to an employee carries a strong presumption that such payment is for services rendered. But the reasons underlying decisions of this kind are quite distinct from those which, because of controlling decisions, must govern us in interpreting the Fair Labor Standards Act. We, therefore, are not prepared to follow the Corey decision. Indeed, the increasing strictness of interpretation of the Act in favor of the employee which the Supreme Court, since the decision in the Corey case, has consistently adopted and which has found its latest expression in Schulte v. Gangi, supra, would seem, by implication at least, to forbid the reasoning applied in the Corey decision. If anything further were necessary to support our conclusion, we feel it is to be found in the fact that in the present case the bonus was not paid either as overtime compensation or when such compensation was due and payable under the Act.

We are not advised of any other Federal Court decision on this precise point, but two State Court decisions interpreting the Fair Labor Standards Act, under facts somewhat akin to those here presented, appear to support our conclusion. See Winer v. Eckerling, 1944, 323 Ill.App. 421, 55 N.E. 2d 876, and McMillan v. Wilson & Co., 1942, 212 Minn. 142, 2 N.W.2d 838.

The matter will be referred to a Special Master, for the purpose of determin-

ing the amount that may be due each of the several plaintiffs in conformity with this opinion, and reporting his findings to the Court, unless the parties are prepared to enter into a stipulation with respect thereto.