**WALLING, Adm'r of Wage and Hour Div., U. S. Dept. of Labor, v. FRANK ADAM ELECTRIC CO.**

No. 3886.

District Court, E. D. Missouri, E. D.

June 17, 1946.

William S. Tyson, Sol., of Washington, D. C., Reid Williams, Regional Atty., of Kansas City, Mo., and Samuel P. McChesney, of St. Louis, Mo., for plaintiff.

Cobbs, Logan, Roos & Armstrong, of St. Louis, Mo., by Henry C. M. Lamkin, of Fulton, Mo., for defendant.

DUNCAN, District Judge.

Plaintiff seeks to enjoin the defendant from alleged violation of the provisions of Sections 15(a) (1), (2), and 15(a) (5) of the Fair Labor Standards Act of 1938, Act of June 25, 1938, c. 676, 52 Stat. 1060, U.S. C.A. Title 29, Sec. 201 et seq.

The question for determination is whether or not the failure of the defendant to include a 10% bonus in the computation of overtime paid to certain of its employees during the years 1941, '42, '43, '44 and a part of 1945 was a violation of the Act. The question is now, and at the time of the trial was, largely moot. The alleged violation of the Act ceased with the filing of this suit. It had the effect of suddenly and effectively killing the goose that had been laying the golden egg.

The defendant is engaged in the City of St. Louis in the manufacture and distribution of electrical appliances in interstate commerce, and is, therefore, under the provisions of the Act.

The employees involved in this controversy number from thirty to thirty-five; are employed in the office of the defendant on a regular monthly salary, payable semi-monthly. The salary of all such persons was far in excess of the minimum hourly rate required under the Act.

The defendant admits the payment of the bonus, but contends that it was not a part of the regular rate of compensation, and should not be included in the computation of overtime based upon the regular rate of compensation of all such employees. The defendant included the overtime in computing its Social Security Tax, unemployment insurance, withholding and Victory tax on the income of each of the parties affected in this controversy.

The fact that the alleged violation no longer exists, does not authorize the court to dismiss the complaint on that account. Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754; Otis & Co. v. Securities & Exchange Commission, 6 Cir., 106 F.2d 579.

This is not the usual case of an incentive bonus or a bonus providing that it shall be subsequently paid to certain persons. As heretofore stated, all of the employees involved in this controversy were employed in the office of the company at a regular rate of monthly compensation, payable semi-monthly. In the beginning their pay was based upon a forty hour week, and later upon an eight hour day, forty hour week basis, and in their regular semi-monthly pay check, each of said persons received an additional sum equal to one and one-half times the regular hourly rate for all hours in excess of eight hours a day, and forty hours a week.

That practice extended over all the period of time involved in this controversy. There may have been a few instances when the overtime pay for the preceding two weeks was not all included in such semi-

monthly pay checks because of inability or failure to have computed such overtime at the time of the payment of the regular semi-monthly salaries. At no time was any part of the bonus paid to any person included in the computation of overtime.

A practical example of the method employed may be seen from the payroll record of H. Beerman who received $82.50 semi-monthly as straight time pay at the hourly rate of 95¢ an hour. For example, on October 16, 1944, in addition to his $82.50 semi-monthly pay, he received $8.55 or $1.42½ per hour overtime. To more fully understand the method pursued by the defendant, it might be well to quote the record.

At a meeting of the Board of Directors on April 7, 1942, a motion was adopted providing that a bonus be given employees in the City of St. Louis office who had been in the company's employ since March 1, 1942. The motion further provided that "those in the management group who had not received overtime pay to receive 25%, the balance 10% of all salary received from March 1, 1941 to February 28, 1942." As I understand this order, it provided that all persons who had been in the employ of the defendant for a year, from March 1, 1941, to February 28, 1942, should receive 10% of the salary which had been paid to them during that period of time, and all other persons who had been in the employ from March 1, 1942, should receive a bonus.

On June 23, 1942, the Board of Directors passed another resolution, or a motion in which it stated that the company was making a nice profit, and that a bonus would be paid to those employees who had been in the company since April 1—"this bonus to be on the same schedule as the one paid on April 10 for the year ending February 28, 1942."

On September 8, 1942, the Board again voted that a "bonus be paid to all office employees on September 30 with an additional bonus to those who had been with the company since March 1."

On December 1, 1942, the Board further stated that it had been decided at the first of the year that the matter of the payment of a bonus would be taken up at the Board of Directors meeting previous to the end of each quarter, and at that time, December 1, it was voted that a bonus would be paid on December 31 following "at the same rate as we had paid for the quarter ending June 30."

On February 2, 1943, a bonus for the two months (January and February) remaining in the fiscal year (the company's fiscal year ending February 28) was discussed, "and it was decided that in line with our decision of last year that we would have made during January and February sufficient profit to enable us to pay the office employees, 'not members of the union,' a bonus on February 28 covering January and February." On March 1, 1943, the Board voted a bonus in advance for the month of March.

For the next eight meetings held on June 8, 1943, September 7, 1943, November 13, 1943, February 1, 1944, March 7, 1944, June 6, 1944, September 25, 1944, and December 5, 1944, the Board authorized the payment of a bonus with respect to the various quarters, and "It was decided that we would continue to pay bonus as it had been paid in 1941, '42, and '43. * * *"

On January 12, 1945, the Board authorized payment of a bonus for the months of January and February, 1945, although at its meeting on December 28, 1944, the Board passed a motion indicating that a bonus would not be paid in 1945. At that time a notice was attached to the pay check of each employee for January in which it was stated: "We will therefore, continue the bonus, as long as business conditions justify it. It must be understood that the bonus is not a part of your salary."

On March 27, 1945, the Board voted "we would continue to pay the bonus to all * * * as it had been paid for 1941, '42, '43, and '44 as the sales and production seemed to justify the same."

On June 25, 1945, the Board voted payment of the bonus, stating "as we had in the past several years" and also specified in its motion that the bonus be paid at the "same rate of bonus as had been paid in 1941, '42, '43, and '44."

On September 24 following the institution of this suit, the Board voted that the

814

company was "not in position to pay a bonus on September 30." This suit was filed on September 12.

Thus it will be seen that in each instance (except two or three), during the whole period of time of the payment of this bonus, the provision for the payment thereof was not made by the Board of Directors until near the end of the quarter during which said bonus was to be paid, and after each individual had earned and been paid his or her salary and overtime for that particular quarter. The exceptions are for January, February and March 1945. At that time the meeting was held on January 12 and the bonus voted for the two months. Apparently the same was true in the February meeting in 1943. On February 2, 1943, the bonus was voted for January and February, and on March 1 of that year a bonus was voted for the month of March. The payments made a full quarter and were in conformity to defendant's fiscal year.

A review of the proceedings of the Board will reveal that when the bonus was first authorized in 1942, it was for the entire year 1941 and the first quarter of 1942. The record clearly shows that thereafter the bonuses were not authorized until the end of each quarter, with the exception of the two instances heretofore noted. Its payment was in no sense based upon any additional service to be rendered by the employee; the bonus was not "incentive" payments in any sense of the word, no person was required to do any additional work to earn the bonus. As a matter of fact, all of said persons, with possibly one or two exceptions, earned a very considerable amount of overtime which was based upon their regular rate of compensation, and such overtime was in no way connected or tied in with the bonus. It would seem to me that the bonus was more in the nature of a sharing the profits, or a mere gratuity.

The plaintiff attempts to bring the case clearly within the ruling of a number of cases which have been decided by the Supreme Court holding that the payment of a bonus is a part of the regular rate of compensation, and must be considered in computing overtime, and that if they are not so taken into consideration, it is a violation of the Act.

I have gone over those cases and it seems to me that the facts in each of those cases are different from the facts in the present case. In practically all of those cases the bonus was provided for prior, and not subsequent, to the time it was earned. In most of those cases the bonus was an "incentive bonus" to be paid to certain individuals who performed certain additional services. At the time they performed such additional services, it was with the idea in mind of earning the bonus. In other words, it became in a sense, a contractual obligation which the employer owed to the employee to pay if the employee performed the additional service. Of course, in such cases, the bonus was a part of the regular rate of pay and should have been taken into consideration in computing the overtime. But those cases are all distinguished from the present case, where there was no question of the employee performing additional services to earn the bonus, and it was authorized subsequent to the earning of any salary upon which it was based, by the employees.

The plaintiff contends that this case is on all fours with Walling v. Richmond Screw Anchor Co., 2 Cir., 154 F.2d 780, 781, decided March 8, 1946. In the Richmond Screw case the defendant provided by resolution on April 3, 1943 that:

"All of the company's employees, with the exception of the finishers in the so-called snap-ty department, should be paid a monthly bonus, in war stamps, of 10 per cent of their weekly base salaries for the previous month, commencing in June 1942."

In that case the resolution provided for the payment of bonuses for each month in the future, and not in the past, and was not subject to any further action by the Board. Of course, such a bonus, where it is fixed, is a part of the regular rate of compensation.

As Mr. Justice Murphy said in Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, loc. cit. 424, 427, 65 S.Ct. 1242, 1244, 1250, 89 L.Ed. 1705, 1711:

"The keystone of Section 7(a) is the regular rate of compensation. On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance

"As we have previously noted, the regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." Citing: Walling v. Helmerich & Payne, 323 U.S. 37, loc. cit. 40, 65 S.Ct. 11, 89 L.Ed. 29; United States v. Rosenwasser, 323 U.S. 360, 363, 65 S.Ct. 295, 89 L.Ed. 301.

What could be plainer than those words? What could be more analogous to the situation we have before us in this case? What is the rate actually paid the employee for the non-overtime workweek for which he was employed? It seems perfectly plain to me that it was the regular monthly salary of each employee. It would also seem that the Commissioner has taken this matter into consideration. At one time the Commissioner, in a published Administrative statement dated May 14, 1943, as to bonus payments, stated in part (as quoted in the Screw Company case supra):

"There are two general categories in which bonus plans fall:

"A. In bonus plans of the first category, the payment and the amount of the bonus are solely in the discretion of the employer. The sum, if any, is determined by him. The employee has no contract right, express or implied, to any amount. This type of bonus is illustrated by the employer who pays his employees a share of the profits of his business or a lump sum at Christmas time without having previously promised, agreed or arranged to pay such bonus. In such case, the employer determines that a bonus is to be paid and also sets the amount to be paid.

"Bonus payments of this type will not be considered a part of the regular rate at which an employee is employed, and need not be included in computing his regular hourly rate of pay and overtime compensation.

"B. In bonus plans of the second category the employer promises, agrees or arranges to pay a bonus. The amount to be paid may be fixed or may be ascertainable by the application of a formula. An example of this type of plan is a production bonus based on the excess over a minimum quota which the individual, the group, or the plant, produces in a period of time. Closely akin is a bonus which is paid for performing work in less than an established standard time and also a bonus which is paid when certain types of merchandise are sold through an employee's efforts. Other kinds of bonuses falling within this group are bonuses distributed in a certain amount or on the basis of a fixed precentage of the profits of the employer or of his gross or net income. There are many variations and refinements of plans within this category. For example, the amount of the payment may vary according to the length of service of the employee, his production or compensation; the earnings, production or compensation of the group of employees with which he works; the sales or net or gross income of the employer, or it may be contingent upon his continuing in the employ of the employer until the time the payment is to be made.

"Bonus payments of this type will be considered a part of the regular rate at which an employee is employed, and must be included in computing his regular hourly rate of pay and overtime compensation."

■ It seems to me that the bonus in this case, which was provided for subsequently to the earning of the compensation upon which it was based, is not any part of the regular rate of compensation. As heretofore stated, the overtime pay computed upon the basis of the regular rate of pay was paid semi-monthly along with the regular rate of pay.

If plaintiff is right in its contention that the method of paying this bonus is a violation of the Act, then in order to comply with Section 7 of the Act, it would be necessary every three months, in the event the employer saw fit to make provision for the payment of the bonus, to march down the hill, start the overtime process all over and march back up the hill where it left off at the end of the quarter. Such does not seem to me to be a reasonable inference.

If the provision for the payment of the bonus had been made prior to the earning of the regular rate of compensation, then, of course, there would be no difficulty in computing the overtime based upon what the employee expected to receive as a result of the bonus arrangement. But that is not true in this case. It isn't provided for until after the pay has been earned.

Under the circumstances of this case I can come to no other conclusion except that the bonus was not a part of the regular rate of compensation i. e., that compensation paid to the employee for the normal non-overtime workweek for which he is employed.

Findings of Fact, Conclusions of Law and Judgment may be submitted in accordance with these findings.