WALLING, Adm'r, Wage and Hour Div.,
U. S. Dept. of Labor, v. GARLOCK
PACKING CO.

No. 124, Docket 20409.

Circuit Court of Appeals, Second Circuit.

Jan. 16, 1947.

Writ of Certiorari Denied May 5, 1947.

See 67 S.Ct. 1310.

George M. Szabad, Atty., U. S. Dept. of Labor, of Washington, D. C. (William S. Tyson, Sol., Morton Liftin, Asst. Sol., and Joseph M. Stone, Atty., all of Washington, D. C., and Irving Rozen, Regional Atty., of New York City, on the brief), for appellant.

George Link, Jr., of New York City (McKercher & Link, of New York City, on the brief), for appellee.

Before SWAN, ANGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

In Walling v. Richmond Screw Anchor Co., 2 Cir., 154 F.2d 780, certiorari denied Richmond Screw Anchor Co. v. Walling, 66 S.Ct. 1383, this court affirmed an injunction against a violation of § 7(a) of the Fair Labor Standards Act, 29 U.S.C.A. § 207(a), by means of a production incentive wage bonus plan. Here the legality of a bonus plan similar to that one in purpose, but differing in the details of administration, is being questioned. In June, 1937, defendant corporation promulgated a "wage premium plan" under which its employees were to receive regular "wage premiums" or bonuses. Under the plan an amount of money equal to the dividend declared on a certain number of shares of defendant's common stock was paid each quarter to each hourly-paid employee who had worked for six months. The number of imaginary shares on which the payment was based varied from employee to employee, according to the length of his service with defendant, starting with five shares for six months' service, with an additional five shares for each further service of six months, up to a maximum of fifty shares for service of nine years or more. The plan was based on a forty-hour workweek. Employees working forty or more hours per week received the full bonus payment. Employees working fewer hours per week during the quarter preceding the dividend received only that portion of the premium which their average hours of work per week bore to forty hours. To participate in any given distribution a worker must be in the company's employ on the governing distribution date, although the company in its discretion might make allowances for interruptions in service due to such causes as lack of work or illness. Finally it was provided that the plan might be withdrawn, modified, or amended at any time by the company.

Pursuant to this plan, defendant paid its employees each quarter without interruption large sums of money (in excess of $50,000 per year from 1939 on). The dividend rate, initially set at 75 cents per share, varied between that sum and 25 cents per share,

except for two dividends of $1 and $1.25 each; but since 1938, it has never been below 50 cents, and for the last three years before action brought was steadily at that rate. Defendant has always deducted from the sums paid under the plan the employees' social security and withholding income taxes, while it has reported the amounts paid as labor costs in calculating production costs and claiming deductions on its income tax returns. As the court below found, on the basis of stipulated testimony, the employees, while understanding that defendant was under no obligation to them under the plan if it failed to pay a dividend and could also withdraw, modify, or amend the plan, nevertheless "look forward to and expect to receive the wage premium or cash dividends and have assumed that at the expiration of each quarter the payment of the amounts provided for will be made to them."

Alleging these facts, the Wage and Hour Administrator brought this suit to enjoin defendant from violating the Act by failing to regard payments under the plan as part of the employees' regular wages in computing overtime rates and by shipping in interstate commerce goods produced by employees covered by the plan. §§ 15(a) (1) (2), 17, 29 U.S.C.A. §§ 215(a) (1) (2), 217. The District Court dismissed the complaint on the ground that the amounts paid by defendant to its employees under the plan were not part of their regular rates of pay. The Administrator appeals.

Under § 7(a) (3) of the Act an employer must compensate an employee working overtime at a rate of pay not less than one and one-half times "the regular rate at which he is employed." The Supreme Court has stated that "the regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424, 65 S.Ct. 1242, 1245, 89 L.Ed. 1705; see also Walling v. Harnischfeger Corporation, 325 U.S. 427, 65 S.Ct. 1246, 1250, 89 L.Ed. 1711. Applying this principle, pay-

ments received by virtue of the plan before us are part of the regular rate. In nine years not one quarterly payment has been skipped; employees were informed of the plan when they were hired and looked forward to receiving its benefits throughout the duration of their employment. Disbursements under the plan were presumably made by ministerial pay roll agents of defendant, along with the periodic wages, once the defendant's directors had declared a dividend. True, defendant's directors had the power to pass a bonus payment by passing a dividend; but the passing of a dividend is so grave a confession of financial weakness that it is unthinkable that defendant's directors would take that action just to pass a bonus payment. Defendant also had the power to withdraw, modify, or amend the plan. This power is not different from the power possessed by all employers to withdraw any schedule of weekly wages paid to employees who are not under term contracts. The power to withdraw the plan was present in Walling v. Richmond Screw Anchor Co., supra, 2 Cir., 154 F.2d 780, 782, 784; but we decided that the payments there involved were part of the regular rate of compensation, saying, "But the undenied, crucial fact here is that in fact they were regularly paid."

It is further true that the exact amount to be received was dependent upon the size of the dividend declared, and hence was not susceptible of being exactly computed by the employee before the dividend was actually declared. This, however, should not affect its character as regular wages. Although the employees did not know the exact size of their bonuses or premiums, they did know that the payments would come. Moreover, when defendant determined the size of the dividend, an action governed in the main by considerations other than the wage bonus, the amount of the bonus became fixed and absolute and each employee could then calculate his premium. No independent setting of the amount of the premium by defendant's directors was thereafter required. In actual fact there was substantial regularity in the dividend rate. In Walling v. Richmond Screw Anchor Co., supra, we quoted and

accepted an interpretative statement by the Administrator as to bonus payments, distinguishing between a bonus not previously agreed upon or arranged (such as a lump sum payment at Christmas time) and one which the employer arranges to grant with regularity. This is certainly of the latter type. He added the further description, "The amount to be paid may be fixed or may be ascertainable by the application of a formula." Here the formula was clear from the beginning, with only the rate, already indicated exactly or within narrow limits, to be finally determined by the directors when acting to decide upon the distribution of profits to the stockholders. The difference is made pointed by a case such as Walling v. Frank Adam Electric Co., D.C.E.D.Mo., 66 F.Supp. 811, cited by defendant, where, as the court found, the directors on a number of occasions, and without a promulgated plan, declared bonuses for work already performed and in amounts only then determined. On the court's finding there, it was certainly more justified than we should be here in concluding that the bonuses fell within the Administrator's first category.

It is urged upon us, however, that there is no relationship between the bonus or premium paid and the amount produced or the time worked by the employee, and therefore that the bonus is not part of the regular rate of compensation. But this argument is not convincing, since the relationship between bonus and work is the same as that between weekly wages and work. Each is the consideration in whole or in part for the other, and the words "regular rate" in the statute do not require any other relationship. The creation of a new bonus system, moreover, is, like any pay raise, an inducement to attract new and more skillful workers and a gesture of good will to stimulate production by existing workers. Moreover, the plan is an incentive to continuity and length of service and thus follows normal objectives of both labor and management.

Under the decision below the effect of defendant's plan would be to free it from the statutory requirements for overtime payments. Thus, even though quarterly bonuses would be for all practical purposes a part of the regular wage rates, yet defendant would be able to avoid paying time and a half for overtime based upon them. Wage payment plans having the same purpose and effect as this one were declared violative of the Act if not included in the wage rates, in Walling v. Youngerman-Reynolds Hardwood Co., supra; Walling v. Harnischfeger Corporation, supra; and Walling v. Richmond Screw Anchor Co., supra. In each of these cases the employees' wages and the employer's labor costs were both increased by the increase in overtime wage rates. Other employers have doubtless revised their bonus plans to conform to the rule of those decisions. To deny an injunction against this plan, as now administered, would be to deny to defendant's employees benefits under the statute which have inured to employees of other firms. Moreover, it would give defendant an advantage over competitors in labor costs derived not from efficiency of utilization of labor, but from differences in details of draftsmanship in their respective bonus plans. We see no reason for doing this.

Reversed and remanded for the issuance of an injunction.

SWAN, Circuit Judge (concurring).

The defendant's plan for "wage premiums" to be measured by "imaginary stockholdings" was put into operation before the passage of the Fair Labor Standards Act of 1938. The announcement to the employees stated that the plan was to take the place of the company's former practice of extending "courtesies to you in the form of a picnic allowance at mid-year and a Christmas gift at approximately the year end and in other ways." At the time of the adoption of the plan the plant employees were paid a base hourly rate plus a production incentive bonus of approximately 25% of the hourly rate. After enactment of the Fair Labor Standards Act the company has paid time and one-half upon these amounts for all overtime. In addition, it has paid "imaginary dividends" to employees who are still in its service on the quarterly dividend date but has not included these payments in figuring overtime. If free to do so, I would treat the "imaginary dividend" as being a voluntary donation, like a Christmas gift,

rather than a part of the employee's "regular rate" of pay. But since authoritative decisions appear to preclude so treating them, I reluctantly concur in the result of my brothers' opinion.