## WALLING v. FRANK ADAM ELECTRIC CO.

### No. 13478.

Circuit Court of Appeals, Eighth Circuit.

July 14, 1947.

Bessie Margolin, Asst. Sol., United States Department of Labor, of Washington, D. C. (William S. Tyson, Sol., of Washington, D. C., Reid Williams, Regional Atty., of Kansas City, Mo., and Morton Liftin and Frederick U. Reel, both of Washington, D. C., on the brief) for appellant.

Walter L. Roos, of St. Louis, Mo. (Henry C. M. Lamkin and Cobbs, Logan, Roos & Armstrong, all of St. Louis, Mo., on the brief) for appellee.

Before GARDNER, WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment dismissing an action brought to enjoin appellee from violating the provisions of Section 15 (a) (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act, Title 29 U.S.C.A. § 201 et seq.

Appellee is engaged in the manufacture and distribution of electrical appliances in the City of St. Louis, Missouri, and operates in interstate commerce. The employees involved are clerical employees of apellee, most of whom have been so employed for many years. During the depression these employees, as well as the managing officers of appellee took very substantial reductions in their salaries. With the advent of the war business improved so that in April, 1942, the company's accountants showed that considerable profits had been made in the fiscal year ending February 28, 1942. The company then gave these employees a bonus based on 10 per cent of their straight time pay during the fiscal year just closed. Management employees received a 25 per cent bonus. As business continued profitable the Board of Directors of the company at its meeting in June, 1942, voted a bonus to the same employees for the months of April, May and June.

Subsequent bonuses were similarly voted for quarterly annual periods until September, 1944. At the Board meeting of September 25, 1944, the Board voted the clerical employees a bonus for July, August and September but did not include the management employees because at that time net income was reduced and the outlook for business was not promising. At the meeting of the Board in December, 1944, the officers were again excepted from the bonus payment. In January, 1945, after receipt of a tentative report from the company's accountants, it was decided to pay a bonus to the office employees but not to the officers. At the February, 1945, meeting there was discussion as to whether or not a bonus should be paid to the officers but the matter was held in abeyance awaiting further reports from the accountants. At the April, 1945, meeting one of the company's accountants gave an encouraging report for the fiscal year ending February 28, 1945, and the Board thereupon decided to pay the bonus to the officers. In June, 1945, it was decided to pay the bonus for April, May and June to the employees but not to the officers. At a meeting on September 24, 1945, the report of the company's accountants reflected a very small profit. Reconversion problems had arisen and it was decided that the company was not in a position to pay a bonus for the quarter ending September 30, 1945. The clerical employees were paid semi-monthly and each of the semi-monthly checks included payment for the straight time and if overtime were worked payment for the overtime hours less the deduction for old age benefits and withholding tax.

The trial court filed an opinion reported in D.C., 66 F.Supp. 811, and also made detailed findings of fact and conclusions of law, finding as a matter of fact and concluding as a matter of law that the payment of the bonus was in no sense based upon any additional service to be rendered by the employees; that it was not an "incentive" payment since no person was required to do any additional work to earn it, and it denied the injunction, dismissed the action and taxed costs to appellant.

In seeking reversal appellant contends that (1) the bonus should be included in

determining the regular rate of pay within the meaning of Section 7 of the Fair Labor Standards Act, and (2) costs may not be taxed against the Administrator of the Wage and Hour Division in an action brought by him under Section 17 of the Act.

In the final analysis the issue to be decided is dependent upon what was the regular rate of compensation paid defendant's employees within the meaning of the Fair Labor Standards Act, and in turn in determining that fact it is necessary to consider whether the bonus payment should be considered as part of the regular compensation of the employees.

Section 7(a) of the Fair Labor Standards Act of 1938 provides:

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

\* \* \* \* \* \*

"(3) for a work week longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

The words "regular rate" are not defined in the Act. Referring to this fact the Supreme Court in Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 13, 89 L.Ed. 29, said: "While the words 'regular rate' are not defined in the Act, they obviously mean the hourly rate actually paid for the normal, non-overtime workweek."

The court further said: "The Act clearly contemplates the setting of the regular rate in a bona fide manner through wage negotiations between employer and employee, provided that the statutory minimum is respected."

Indicating that the term is not capable of an arbitrary definition, but must be determined by the facts and circumstances of each case, the Supreme Court in Walling v. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 1229, 86 L.Ed. 1716, among other things said: "Presumably Congress refrained from attempting such a definition because the employment relationships to which the Act would apply were so various and unpredictable. And that which it was unwise for Congress to do, this Court should not do."

In Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 1248, 1250, 89 L.Ed. 1711, the Supreme Court indicated that in arriving at the regular rate the court looks "to the actual payments \* \* \* which the parties have agreed shall be paid during each workweek." And in Walling v. Youngerman-Reynolds Hardware Co., 325 U.S. 419, 65 S.Ct. 1242, 1245, 1250, 89 L.Ed. 1705, the court said: "Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation \* \* \*."

It appears without dispute and the court found that, "In this case there was no question of the employee performing additional services to earn the bonus, and it was authorized subsequent to the earning by the employee of any salary upon which it was based." The court also found that the regular monthly salary of each empoyee was the rate actually paid the employee for the normal non-overtime workweek for which he was employed and the bonus was not a part of such rate. The court concluded that, "The bonus was more in the nature of a sharing of profits or a mere gratuity. Under the circumstances of this case, the court can reach no other conclusion except that the bonus was not a part of the regular rate of compensation, i.e., that compensation paid to the employee for the normal non-overtime workweek for which he is employed." Having in mind that the question as to what is the "regular rate" has not been defined either by Congress or by the Supreme Court, but that this must be determined in each case from a consideration of the facts and circumstances, we must assume that the findings of the court are correct and "shall not be set aside unless clearly erroneous." Rule 52 (a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Sears, Roebuck & Co. v. Talge, 8 Cir., 140 F.2d 395; American Ins. Co. v. Scheufler, 8 Cir., 129 F.2d 143; F. W. Fich Co. v. Camille, Inc., 8 Cir., 106 F.2d 635. In reviewing the sufficiency of the evidence to sustain the findings, the evidence must be viewed in

the light most favorable to the prevailing party and every inference fairly deducible from the evidence in favor of the findings must be indulged. United States v. Nelson, 8 Cir., 102 F.2d 515.

It is to be noted that the first bonus payment was voted in April, 1942, and that it covered the entire year of 1941, long after the services had been performed. Later payments were voted at or near the end of the period covered and not before the services had in fact been performed. They were not and could not have been "incentive" in character. There was no contract, agreement or arrangement for the payment of these bonuses and as has been observed they were not voted in advance of the services to be performed. In a release dated September 2, 1941, the Administrator attempted to define the policy of his department concerning bonuses. After stating that there are two general categories in which bonuses fall, he said:

"In bonus plans of the first category, the payment and the amount of the bonus are solely in the discretion of the employer. The sum, if any, is determined by him. The employee has no contract right, express or implied, to any amount. This type of bonus is illustrated by the employer who pays his employee a share of the profits of his business or a lump sum at Christmas time without having previously promised, agreed or arranged to pay such bonus. In such case, the employer determines that a bonus is to be paid and also sets the amount to be paid.

"Bonus payments of this type will not be considered a part of the regular rate at which an employee is employed, and need not be included in computing his regular hourly rate of pay and overtime compensation."

There was neither contract, promise, agreement nor arrangement for the payment of these bonuses prior to the starting of the work period for which they were given. The testimony indicates that the question of whether or not a bonus would be paid was dependent upon the earnings of the company and, as held by the trial court, it was in the nature of a profit sharing with its employees when conditions justified the giving of such bonuses.

In a recent case in the District Court of Maryland, Black v. Roland Electrical Co., 68 F.Supp. 117, 118, employees sought to recover unpaid overtime compensation. The employer sought to be credited with certain bonus payments on the theory that they were part of the compensation paid. In the course of the opinion it is, among other things, said: "It was also the practice of the defendant, in the year 1941 and each succeeding year, to pay its employees a bonus amounting to 5% of his gross pay, determined as of the end of November of each year. On the pay-day preceeding Christmas, each employee was given a company check for such bonus, less social-security and withholding tax. This was a voluntary payment on the part of the defendant, no previous arrangement having been entered into between the defendant and its employees with respect to the payment of any bonus."

In considering whether the employer was entitled to deduct the bonuses paid the court, among other things, said:

"In the present case, the bonus was paid annually on the basis of 5% of the wages which the recipient had earned during the last eleven months. This fact, coupled with the fact that these bonus payments were carried on the books of the defendant company as employee compensation; that the company deducted them in computing its income, withholding and social security taxes, is stressed by the company as supporting its right to apply these bonuses as part of its obligation to the present plaintiffs under the Fair Labor Standards Act.

" * * * However, such a situation is not analogous to that in the present case. There, the bonuses were paid currently in direct relation to the piece-work being performed by the employee, as an incentive to a greater volume of production. In the present case, the bonuses, while scaled according to the employees' annual income, were really in the nature of an outright gift, as evidenced by the testimony, uncontradicted, to the effect that these payments had been instituted in 1941 in place of Christmas gifts, previously made by the defendant to its employees, in the form of a turkey or some other gift.

*    *    *    *    *    *

"If anything further were necessary to support our conclusion, we feel it is to be found in the fact that in the present case the bonus was not paid either as overtime compensation or when such compensation was due and payable under the Act."

In Winer v. Eckerling et al., 323 Ill.App. 421, 55 N.E.2d 876, 878, action was brought under the Fair Labor Standards Act to recover for overtime wages. The defendants counterclaimed for money paid as a bonus. After reciting that defendants had paid a straight weekly salary of $35 during the time involved, the court said:

"Defendants made a payment of $300 to plaintiff on December 31, 1940 under circumstances hereinafter shown. They counterclaimed for that amount and contend that 'any amount that might be found due plaintiff should be credited against the advance given plaintiff on December 31, 1940.'

"Bonuses were paid to plaintiff by defendant at the end of the years 1936, 1937, 1938 and 1939 in the respective amounts of $75, $100, $150 and $250."

The court then pointed out that there was a conflict in the evidence as to the conversation between the employer and the employee at the time of the payment of the bonus but held that the trial court's finding was conclusive on that question, the court saying:

"The trial court found that the $300 was paid as a bonus and this finding, unless it was against the manifest weight of the evidence, is conclusive as to defendants' instant contention that they are entitled to a credit of $300 against their liability for violating the provisions of the Fair Labor Standards Act.

\* \* \* \* \* \*

"Since the $300 was paid to plaintiff as a bonus, it belonged to him and no liability thereafter assessed against defendants for his unpaid overtime compensation could be charged against it."

Appellant cites Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 1250, 89 L.Ed. 1711; Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 1250, 89 L.Ed. 1705; Walling v. Richmond Screw Anchor Co., 2 Cir., 154 F.2d 780; Walling v. Garlock Packing Co., 2 Cir., 159 F.2d 44; Walling v. Stone, 7 Cir., 131 F.2d 461, in support of his contention that the bonus paid in the instant case was a part of the regular rate of compensation and hence, that he was entitled to recover. An analysis of these decisions convinces that they do not sustain appellant's contention in this regard. In Walling v. Harnischfeger, supra, the employees were guaranteed a minimum hourly wage but they could and did earn regularly considerably more than the guaranteed minimum wage by producing a larger amount of work than a fixed standard. This was clearly an incentive bonus and the court held the higher wage actually earned, although fluctuating, was the regular rate of pay on which the overtime was based. The earned piece rate was held to be the regular rate.

In Walling v. Youngerman-Reynolds Hardwood Co., supra, compensation for piecework was involved. The employer contracted to pay the employees 35¢ an hour for forty hours and one and one-half times as much for each hour of overtime. They had previously averaged 59¢ an hour. At the same time the company contracted with the employees that they would guarantee a fixed sum on piecework. The guaranteed piece rate yielded greater returns on an hourly basis for both regular and overtime than the 35¢ hourly rate and the piecework rates were the compensation actually paid. The court held that the regular rate must reflect all payments which the parties had agreed should be received regularly during the workweek, exclusive of overtime payments. The 35¢ rate was nominally fixed as a means of circumventing the Fair Labor Standards Act while the production guaranteed an average of 59¢ an hour under the piecework rate which was actually paid.

This court in Carleton Screw Products Co. v. Fleming, 8 Cir., 126 F.2d 537, 541, held to the same effect. In that case we said: "The entire purpose of the plan was to escape paying overtime on the basis of that rate. The bonus has none of the earmarks of a bonus, but it was in fact a part of the employees' regular compensation. \* \* \* The so-called bonus was paid pursuant to a contractual obligation, and it was

considered as part of the regular compensation and not as a gratuity."

In the instant case the regular rate was not a fabrication but an actual one. It is what the company contracted to pay its employees and what the employees agreed to receive and it is what they did receive.

In Walling v. Richmond Screw Anchor Co., supra, also relied upon, the employer had given bonuses to his employees first in 1933. It began a yearly bonus in 1936. On April 3, 1942, the company voted a monthly bonus of 10 per cent of weekly base salary for the previous month. This bonus plan was to commence in June, 1942, a date in advance of the time when it was voted, and thereafter the employees received overtime for all hours over forty at the rate of one and one-half times the basic weekly salary. Under this arrangement the bonus was to continue until further action by the board. In that case the bonus was paid monthly and it was a continuing compensation voted in advance. This clearly robbed it of all semblance of being a bonus. In the instant case, however, the bonus was paid each three months to employees who met the necessary qualifications, and as has been pointed out, was voted at or near the end of the period, and each bonus was voted on separately and was dependent upon the earnings of the company. There was no formula that could be applied and on several occasions the bonus was not voted as to part of the employees and at least on one occasion the bonus was voted to be withheld, and at a later time, the profits of the business warranting it, the directors voted another gift or bonus to the employees. This clearly distinguishes the present case from the Anchor Co. case.

In Walling v. Garlock Packing Co., supra [159 F.2d 46], a wage premium plan was adopted pursuant to which employees were thereafter to receive regular wage premiums or bonuses. It was stipulated in that case that the employees accepted and looked forward to receiving the bonus though they knew the company could withdraw the plan. However, the plan was not withdrawn and the board had voted to pay regularly thereafter a bonus. This clearly distinguishes that case from the case at bar, and in fact, that court pointed out the distinction between the facts in that case and the instant case, saying: "The difference is made pointed by a case such as Walling v. Frank Adam Electric Co., D.C. E.D.Mo., 66 F. Supp. 811, cited by defendant, where, as the court found, the directors on a number of occasions and *without a promulgated plan* declared bonuses for work *already performed and in amounts only then determined.* On the court's finding there, it was certainly more justified than we should be here in concluding that the bonuses fell within the Administrator's first category." (Italics supplied.)

The court in the Garlock case declined to follow the decision of the trial court in this case, not because it disagreed with the law as so announced, but because the facts clearly differentiated it from the facts in the Garlock case. For like reason we do not think the Garlock case supports appellant's contention in this case.

In Walling v. Stone, supra, a bonus payment was paid to employees if and when they produced quantities in excess of a stated minimum and the amount of the bonus depended upon the excess in production. The court properly held the bonus a part of the regular scheme of compensation. The amount of the bonus was arrived at by reason of the contract between the employer and the employees and it was paid only when the employees turned out a certain definite amount of work. In other words, it involved an incentive payment.

In the instant case, the parties had agreed upon the basic wages and there was never any contract, agreement or arrangement for the payment of the bonus. It was not held out as an inducement or incentive but, as has been pointed out, was voted after and when the period covered had in some cases wholly expired and in all the others had substantially done so. On consideration of all the facts and circumstances the trial court concluded that these bonuses were not promised by the company and that they were not paid pursuant to any prior agreement or arrangement between the company and its employees. These facts distinguish this case from the cases cited by appellant.

Since the argument and submission of this case counsel for appellant have called

our attention to the decision of the Sixth Circuit in Walling v. Wall Wire Products Co., 161 F.2d 470, 473, but that case does not support nor strengthen the contention of appellant. There the employer entered into a collective bargaining agreement with its employees, providing for a specific minimum hourly rate of pay and also for payment to its employees of 25 per cent of the company's profits after deduction of a stated payment of interest on borrowed money. In the course of the opinion it is said: "What, then, is the regular rate of pay in a case like the one before us? It must be the total compensation *agreed upon and received by the employees,* not including overtime. *The contract before us is a contract for compensation* embodying both the payment of a regular rate per hour as well as a share of the profits. The total compensation agreed upon was the hourly rate of pay specified in the collective bargaining contract, plus the share of profits which it was agreed all employees would receive by way of additional compensation." (Italics supplied.)

In that case the employees had a contract which required the payment of the additional compensation. This contract could have been enforced, if necessary, by action to recover such additional compensation. In the instant case there is a total lack of any contract, any agreement, or any arrangement prior to the starting of the work period for which the bonus was given, and we agree with the trial court that the bonus payments should not be considered as part of the regular rate of compensation.

It remains to consider the contention that appellant is not liable for costs. In the absence of statutory authority costs will not be taxed against the United States. United States v. Morley, 281 U.S. 339 50 S.Ct. 291, 74 L.Ed. 887; United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131, DeGroot v. United States, 5 Wall. 419, 18 L.Ed. 700. Plaintiff has sued in his official capacity as authorized by the Fair Labor Standards Act, Section 11 (a), 29 U.S.C.A. § 211 (a). Suits of this character are brought by the Administrator, it is true, but in the public interest. Walling, Adm. v. Norfolk Southern Railway Co., 4 Cir., 162 F.2d 95.

The judgment appealed from is therefore modified by eliminating therefrom that part of the judgment which assesses costs against the plaintiff, and as so modified will be affirmed.