McCOMB, Adm'r of Wage & Hour Division, U. S. Dept. of Labor, v. SHEPARD NILES CRANE & HOIST CORPORATION.

No. 52; Docket 21085.

United States Court of Appeals Second Circuit.

Dec. 1, 1948.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and CLARK, Circuit Judges.

William S. Tyson, Sol., Bessie Margolin, Asst. Sol., and Frederick U. Reel and Sidney S. Berman, Attys., all of Washington, D. C., and John A. Hughes, Regional Atty., of New York City (William Lowe, of New York City, of counsel), for plaintiff.

Burke & Burke, of Elmira, N. Y. (James L. Burke, of Elmira, N. Y., of counsel), for defendant.

AUGUSTUS N. HAND, Circuit Judge.

This action was begun in October, 1945, by the Administrator of the Wage and Hour Division to enjoin violation of the overtime provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The Administrator moved for summary judgment based upon the complaint, the answer, and a stipulation of facts. The defendant filed affidavits in opposition to the motion, and the District Court denied the motion and dismissed the complaint.

The defendant is a corporation engaged in the manufacture and sale of electric cranes, hoists and allied products, and has about 450 employees who are admittedly covered by the Act. Beginning August 29, 1940, and until shortly before the institution of this suit, the defendant made bonus payments to its employees at approximately[1] three month intervals. These bonus payments were in addition to other hourly and incentive earnings of the employees. They generally followed a resolution of the defendant's board of directors making provision for the payments "as additional

[1] Only during the year 1941 was there a change from an approximate three-month interval to a two-month interval. We need not say whether this change in interval of payment for one year could affect the extent of any right of an employee to recover additional overtime payments, for the question of his rights to recover is not before us in the present case, which only involves the right of the Administrator to an injunction. It may be added, however, that if the payments in 1940 were part of an arrangement to supplement the regular compensation of the employee, it would seem difficult to suppose that a change in the intervals of payment from three to two months could affect a previous understanding as to the character of such payments.

compensation for services rendered." These bonus payments were at all times based upon the straight-time hourly rates of the employees,[2] but the amounts paid were changed three times: April, 1942; July, 1942; and December, 1944.

The defendant always deducted social security taxes from the bonus payments, included them as "Salary and Wages" in its income tax returns, and also included them in computing the premium on its workmen's compensation insurance and unemployment insurance. Likewise, it included them in Victory and withholding tax deductions.

The defendant did not, however, include the bonus payments in computing the regular rate of pay under the Fair Labor Standards Act.

On August 23, 1943, the defendant applied to the National War Labor Board for approval of its practice of making bonus payments. In a letter accompanying the application, the defendant company recited that during the year 1942 it had paid four bonuses to its hourly rate employees which "were paid about every three months and were at the exclusive discretion of the employer." It said that the amounts of the bonuses were increased principally because of the increased cost of living, and that it wished to continue them at the amounts which had been paid on October 1 and December 17, 1942. It added in the letter that "certain key men" received additional sums that were paid on April 2, July 2, October 1, and December 17.

Just prior to an election held in December, 1943, to determine the collective bargaining agent of defendant's employees, the company sent a letter to each of its employees together with a payroll slip indicating the total payments from the company to the individual employee during the first nine months of 1943. This included all the earnings paid to the employee, whether as bonuses or otherwise.

It is stipulated that some of the employees who had received the payments here described if called to testify at a trial would say that "they expected to continue to receive these bonus payments and assumed that they would continue to be made and that they regarded these bonus payments as an integral part of the total earnings received for the work performed for the defendant; and further that this expectation and assumption was predicated on the fact that the bonus payments had been made at recurrent intervals as described in this stipulation over a substantial period of time."

Subsequent to the stipulation and the motion for summary judgment affidavits of six employees were filed, which stated that the latter considered the bonus payments as "gifts from the company and not part of the regular wages." Likewise an affidavit of the defendant's President and General Manager was filed that the bonuses "were paid as an exercise of arbitrary discretion on the part of the board which would in each case decide to reward the employees in any amount it felt was reasonable at the particular moment."

Upon the record we have described the District Court held that the bonus payments were not part of the regular rates of compensation of the defendant's employees in that they were not paid under a promise that any bonus payment would be made at any future time, or under any plan or formula determining bonus payments that was ever communicated to the employees, and further that the payments did not conform to the description of bonuses as published by the Wage and Hour Administrator in his Interpretive Bulletin released February 5, 1945. Accordingly, the District Court denied the Administrator's application for an injunction and dismissed his complaint.

Section 7(a) of the Fair Labor Standards Act provides that no employer shall employ any employee engaged in commerce or the

---

[2] There were certain key employees who were at various times, beginning July, 1941, given flat sums of money in addition to the bonuses which they received along with the other employees. These key employees varied in number from about twenty to thirty. We find nothing in the briefs to indicate any claim that these additional sums to relatively few key employees should be included as part of any bonus arrangement on which overtime should be computed.

production of goods for commerce for more than forty hours per week "unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Section 15 of the above Act provides that it shall be unlawful to violate Section 7, and Section 17 authorizes the District Court to restrain violation of Section 15 by the issuance of an injunction.

The question before us is whether the bonus payments which were based on the employee's hourly rates of pay and at least since 1941 were paid at regularly recurring intervals should be regarded as a part of the employee's regular rate of pay within the meaning of Section 7(a). We think this question must be answered in the affirmative under the two recent decisions of this court in Walling v. Richmond Screw Anchor Co., 2 Cir., 154 F.2d 780, certiorari denied 328 U.S. 870, 66 S.Ct. 1383, 90 L. Ed. 1640; and Walling v. Garlock Packing Co., 2 Cir., 159 F.2d 44, 169 A.L.R. 1303, certiorari denied 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837. In both of those cases there was a "plan" for awarding bonuses which had been announced to the employees in advance with, however, the right of the company to deny a bonus at any time if its board of directors so determined. Moreover, in Walling v. Garlock Packing Co., supra, the receipt of a bonus was dependent upon a vote of a dividend to stockholders by the board of directors, a feature which added a further uncertainty as to the receipt of any bonus. We see no tenable distinction between an announcement of a bonus in advance when that bonus might at any time be withdrawn and a regular payment of a bonus at recurrent intervals, for in either event the expectation and reliance of the employee would be the same. This would certainly be true as of October, 1945, when the present action was brought, for long prior to that time there had been recurrent payments of bonuses at substantially equal intervals.

In the Richmond Screw Anchor case, as in the case at bar, employees furnished affidavits that they did not regard the bonuses as part of their salary and knew that the company had the right at any time to withhold them. Nevertheless, Judge Frank in his opinion held that no issue of fact existed, saying that [154 F. 2d 784]:

"We take it as admitted that the company was not legally obligated to pay the bonuses, that the employees knew the payments were not contractual, and that the company would have discontinued them 'if and when the company finances indicated an unhealthy condition.' But the undenied, crucial fact here is that in fact they were regularly paid. Although the employees knew they could not legally compel the company to make those payments, no one can doubt that the employees assumed that, in the normal course of events, the employees would receive them. That seems to us to be enough to constitute them part of 'the regular rate at which' the men were employed."

We may add that the affidavits submitted by the employees did not bear upon their expectations of the payment of bonuses but only upon their right to receive them if the company chose to withhold payment—a right which clearly did not exist. The basis for an expectation of bonuses in the case at bar was well established and the affidavits created no issue as to their expectation.

In Walling v. Frank Adam Electric Co., 163 F.2d 277, the Court of Appeals for the Eighth Circuit declined to include bonuses for the purpose of computing the regular rate of pay on the ground that no plan had been promulgated by the company in advance and that the bonuses were all voted at the end of the different periods without any obligation for continuance. The court adverted to the distinction between such a situation and one where an antecedent plan existed and observed that in Walling v. Garlock Packing Co., supra, Judge Clark had referred to this fact as a possible distinction between the Garlock case and the holding of the District Court in Walling v. Frank Adam Electric Co., 66 F.Supp. 811. But, as we have already said, we can see no distinction between a "plan" capable of withdrawal at any time and an arrangement which the employee had every reason

to suppose would be continued in the absence of some change of circumstances. Were this distinction made significant and controlling, it would afford a ready means for a company to obtain discriminatory rights in paying overtime.

The Interpretive Bulletin of the Wage and Hour Administrator upon which the District Court considerably relied is, so far as pertinent, quoted in the margin.[3]

 It is to be noted that the Bulletin while indicating an official interpretation of the meaning of "regular rate of pay" has not under well established rules the effect of a regulation provided for by law but only the persuasive effect which should be given to the reasoning of a department expert in the field. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580, note 17, 62 S.Ct. 1216, 86 L.Ed. 1682. We have already held in our Richmond and Garlock decisions that a bonus paid at regular intervals which might be withdrawn at will was an "arrangement" within the meaning of the Interpretive Bulletin on which the employee might rely in computing his overtime. The expectation of the latter, based upon payment of bonuses at regular intervals, would seem to be no different, particularly where as here the company had notified its employees of the amount of bonus payments made to them during a long period and expressed the hope that "they would be able to pay more prosperity bonuses in the future." See Exhibit F of Stipulation of Facts.

For the foregoing reasons, the judgment of the District Court dismissing the complaint should be reversed and a judgment entered enjoining the defendant from violating the provisions of Section 15(a) (1) and 15(a) (2) of the Fair Labor Standards Act by failing to include the bonus payments in computing amounts due to its employees for overtime.

---

3 "There are two general categories in which bonus plans fall:

"A. In bonus plans of the first category, the payment and the amount of the bonus are solely in the discretion of the employer. The sum, if any, is determined by him. The employee has no contract right, express or implied, to any amount. This type of bonus is illustrated by the employer who pays his employees a share of the profits of his business or a lump sum at Christmas time without having previously promised, agreed or arranged to pay such bonus. In such case, the employer determines that a bonus is to be paid and also sets the amount to be paid.

"Bonus payments of this type will not be considered a part of the regular rate at which an employee is employed, and need not be included in computing his regular hourly rate of pay and overtime compensation.

"B. In bonus plans of the second category the employer promises, agrees or arranges to pay a bonus. The amount to be paid may be fixed or may be ascertainable by the application of a formula. An example of this type of plan is a production bonus based on the excess over a minimum quota which the individual, the group, or the plant, produces in a period of time. Closely akin is a bonus which is paid for performing work in less than an established standard time and also a bonus which is paid when certain types of merchandise are sold through an employee's efforts. Other kinds of bonuses falling within this group are bonuses distributed in a certain amount or on the basis of a fixed percentage of the profits of the employer or of his gross or net income. There are many variations and refinements of plans within this category. For example, the amount of the payment may vary according to the length of service of the employee, his production or compensation; the earnings, production or compensation of the group of employees with which he works; the sales or net or gross income of the employer, or it may be contingent upon his continuing in the employ of the employer until the time the payment is to be made.

"Bonus payments of this type will be considered a part of the regular rate at which an employee is employed, and must be included in computing his regular hourly rate of pay and overtime compensation."