Douglas B. Maggs, Sol., and Archibald Cox, Associate Sol., both of Washington, D. C., and Kenneth P. Montgomery, Regional Atty., U. S. Department of Labor, Wage and Hour Division, of Chicago, Ill., for plaintiff.

David Silbert, of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is an action brought by the Administrator of the Wage and Hour Division of the United States Department of Labor to restrain the defendant from continuing alleged violations of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

The parties have entered into a full stipulation of facts and the cause is now presented to the Court on the said stipulation and written briefs and arguments.

Briefly summarized, the facts are as follows: The defendant, an Illinois corporation, is a wholesale distributor of tobacco products in the City of Chicago and elsewhere in the State of Illinois. It secures its products, chiefly cigarettes, from the various manufacturers throughout the United States. In the case of about 75% of the defendant's merchandise the products are shipped by the manufacturers to a freight station and warehouse known as the Western Warehousing Company in Chicago. This Company is a subsidiary of the Pennsylvania Railroad Company. The manufacturers of the products ship in large quantities to the Western Warehousing Company, and the defendant and other wholesale tobacco distributors in the State

**WALLING, Adm'r of Wage and Hour Division, U. S. Department of Labor, v. BRIDGEPORT TOBACCO CO., Inc.**

No. 2666.

District Court, N. D. Illinois, E. D.

Oct. 30, 1944.

of Illinois withdraw their needs from the said warehouse upon presentation of release orders sent to the distributor by the manufacturer. The defendant, after securing these products at the warehouse, takes them in its own trucks to its place of business where they are unloaded, opened, stamped, placed upon the shelves for sale and sold to retailers and sub-jobbers, all within the State of Illinois. The remaining 25% of the defendant's merchandise is shipped directly by manufacturers to the defendant's place of business at which point the products are unloaded by the shippers' agents and left on defendant's platform. They subsequently receive the same treatment as products which the defendant picks up in its own trucks from the Western Warehousing Company. The products consist principally of nationally advertised cigarettes, cigars and pipe tobacco and the volume which defendant purchases each year is approximately $500,000.

The question before the Court is whether all or any of the defendant's employees engaged in the above described operations are "in commerce" within the meaning of that term in the Act sued upon herein.

An exhaustive review of the citations in the briefs before the Court convinces me that the applicable law is contained in the following authorities: Walling v. Goldblatt Bros., Inc., 7 Cir., 128 F.2d 778; Walling v. L. Wiemann Co. 7 Cir., 138 F.2d 602, 150 A.L.R. 878; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; and Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468.

Applying the principles of law announced in the foregoing authorities to the facts in this case, I am convinced that the interstate movement of the tobacco products in question ceases when the said products come to rest in the warehouse of the Western Warehousing Company or on the platform of the defendant's place of business in Chicago. It is only after the products have thus come to rest that the defendant's employees have anything to do with them other than the incidental clerical service of ordering from and remitting to the manufacturer. This slight and inconsequential involvement in interstate commerce is, under the authorities cited above, in my opinion insufficient to bring the operations of any of the defendant's employees within the term commerce as used in the Fair Labor Standards Act.

Accordingly, I find the issues for the defendant and the complaint will be dismissed.