534

JUAN ORTIZ, Plaintiff and Appellee, *v.* SUCRS. DE A. MAYOL & CO., INC., Defendants and Appellants.

No. 11470.   Argued June 2, 1955.—Decided July 29, 1955.

*Damián Monserrat, Jr., Gabriel de la Haba* and *Rafael Baragaño, Jr.,* for appellant. *Ramón Humberto Vargas* for appellee.   *Orlando J. Antonsanti* and *Pascual Amado Rivera* as *amici curiæ.*

MR. JUSTICE MARRERO delivered the opinion of the Court.
This is an action against Sucrs. de A. Mayol & Co., Inc.,

filed by the appellee, claiming the sum of $841.08 in wages allegedly owed to him, as well as an equal amount as a penalty, and attorney's fees. He alleged in synthesis: that defendant was engaged in the importation and wholesale of foreign goods in Puerto Rico; that plaintiff worked for defendant in matters directly connected with interstate commerce from the year 1927 to April 11, 1954; that during the period between August 27, 1951, and April 11, 1954, plaintiff worked for defendant at least 516 extra hours which were not paid to him and for which defendant owes him $670.80; that during that same period defendant paid him at the rate of 62¢ per hour instead of the minimum of 65¢ fixed by law for which reason defendant owes him $170.28.

In its answer, defendant admitted that it was engaged in the importation of foreign goods and that plaintiff worked for defendant during the period alleged in the complaint; it alleged that plaintiff's work was connected with local commerce, and denied the other essential averments of the complaint. It also maintained that the complaint does not state facts sufficient to state a cause of action, because it does not set forth any fact which shows that plaintiff's activities in his employment were connected with interstate commerce and, by way of defense, it alleged that plaintiff's claim had prescribed as to wages connected with work performed prior to May 17, 1952.

After the case was heard on the merits, the trial court decided that plaintiff worked for defendant from August 27, 1951, until April 15, 1954 (*sic*) and that during that period he was covered by the Federal Fair Labor Standards Act, 29 U.S.C.A., § 201 *et seq.* Notwithstanding, the court decided that plaintiff's claim had prescribed as to his claim for wages earned prior to May 17, 1952. As to his claim for wages after that date, and after making a computation of the wages plaintiff should have received in the light of the Fair Labor Standards Act, the court decided that defendant owed plaintiff the amount of $413.41. In view of

that, the court rendered judgment ordering defendant to pay plaintiff that amount, plus an equal amount as liquidated damages and $500 as attorney's fees. Feeling aggrieved by that judgment, defendant appealed to this Court and assigns the following errors:

"1. The lower court erred in deciding that appellee's activities in the discharge of his duty towards appellant, which consisted in picking up the merchandise deposited in appellee's (*sic*) warehouse by an independent contractor, opening the original containers and occasionally sorting the merchandise, **moving it and stacking** it inside the warehouse in order to store the goods in their proper place, are activities connected with interstate commerce and that, therefore, appellee was covered by the provisions of the Fair Labor Standards Act.

"2. The lower court erred in ordering appellant to pay appellee the sum of $500 as attorney's fees."

## Discussions of Errors

The Fair Labor Standards Act is applicable in general terms to any employee "engaged in commerce" or in the production of goods for commerce.[1]  29 U.S.C.A., §§ 206 and 207.  The term "commerce" according to the definition which appears in the same Act, means the communication among the several States, the communication of foreign countries to the States or between any state and any place outside thereof, it being understood that the word State means "any State of the United States or the District of Columbia or any Territory or possession of the United States." Fair Labor Standards Act, § 3 (*b* and *c*) 29 U.S.C.A. § 203 (*b* and *c*).

The lower court decided that plaintiff-appellee was "engaged in commerce" while working with defendant and that therefore he was covered by the Fair Labor Standards Act.

---

[1] The mere fact that the employee's activities affect interstate commerce or affect "commerce" does not necessarily imply that that employee is covered by the Fair Labor Standards Act. *Walling* v. *Jacksonville Paper Co.*, 317 U. S. 564, 87 L. ed. 460; *Kirschbaum Co.* v. *Walling*, 316 U. S. 517, 86 L. ed. 1638.

In support of its determination, the court relied, among others, on the following findings of facts: [2]

".        .        .        .        .        .        .

"5. Defendant was engaged in the importation of foreign goods for sale in Puerto Rico; those goods were sent directly to defendant and once deposited on the docks they were transported and placed in defendant's warehouse by an independent contractor.

"6. It was plaintiff's duty to move, stack and store the merchandise in the appropriate place in the warehouse once it was left there by the independent contractor. The latter never opened the original containers in which the merchandise arrived; but placed it in any space which was available at the time the merchandise was brought from the docks, since there was no specific place or platform designated for the contractor to place it.

"7. On several occasions, plaintiff opened the original containers and then he sorted and placed the merchandise in the appropriate place in the warehouse. The merchandise thus placed then becomes a part of defendant's stock, to be sent when needed to defendant's retail store in San Juan.

".        .        .        .        .        .        .

"9. Occasionally, plaintiff was engaged in other kinds of work within his employment, but his principal duties are the ones enumerated in the preceding findings. There was no distinction made between the time that plaintiff devoted to his regular work and the time he devoted to other kinds of work. Plaintiff in no way intervened in the transportation from the docks to the warehouse nor in the unloading of the merchandise."

Appellant urges that plaintiff is not covered by the aforesaid Act, because when he handled the merchandise it had ceased to be "in commerce" within the meaning of that term in the Act. It contends that the merchandise ceased to be "in commerce" from the moment the independent contractors unloaded it in its warehouse. On the other hand, appellee

---

[2] In this case there is no factual conflict. The parties stipulated that the facts set forth by the trial judge in his findings of fact are correct.

maintains, and the lower court concluded, that the merchandise in question did not cease to be "in commerce" while it was transported by plaintiff and other fellow workers, from the place where the independent contractor (carrier) left it to its place of destination in defendant's warehouse.

Employees actively participating in interstate transportation, transmission, or communication, or in incoming or outgoing foreign commerce to or from the United States, are "engaged in commerce" within the meaning of the Fair Labor Standards Act. 3 Labor Law Reporter, § 25,150, p. 21,731. There is no doubt that if appellant is right in its contention we would have to conclude that in this case the Fair Labor Standards Act was not applicable to plaintiff. When goods are brought from other states or from a foreign country, their transportation is covered by the statute until the goods reach a point of rest within the state, that is, when they reach their destination. This is the point when the goods cease to be "in commerce." Any subsequent transportation within the state is one of local character and does not come within the coverage of the act. See 3 Labor Law Reporter, § 25,150, p. 21,732, and Wecht, *Wage Hour Law*, 1951 ed., p. 55.

■ The jurisprudence interpreting the Fair Labor Standards Act clearly establishes that apart from certain exceptions,[3] goods imported from one state to another, or

---

[3] In *Walling* v. *Jacksonville Paper Co.*, *supra*, the United States Supreme Court decided that when the importer purchases merchandise outside the state on prior orders from specific customers, or in order to deliver it to particular customers as determined by a prior contract or understanding, the goods continue to be "in commerce" until delivery to the customer and this is so, independently of the fact that the goods are taken to the wholesaler's warehouse prior to their delivery to the customer. That case also holds that the foregoing may be applied to certain cases where the wholesaler orders the goods only in anticipation of the needs of specific customers. However, the situation here is different, since there is nothing in the record to show that defendant imported the merchandise on the basis of prior orders, to deliver them to customers as determined by a prior contract or understanding, or in anticipation of the needs of specific customers.

from a foreign country, to be sold in local commerce, cease to be in commerce, pursuant to the statute, when they are delivered to and received by the importer and become a part of his property within the state. See *Fleming* v. *Jacksonville Paper Co.*, 128 F. 2d 395, modified and affirmed in *Walling* v. *Jacksonville Paper Co., supra; Domenech* v. *Pan American Standard Brands*, 147 F. 2d 994; Wecht, *Wage Hour Law, supra.*

However, it seems somewhat complicated to determine, in the light of the decided cases, the exact point when transportation covered by the statute ends. In Wecht, *supra*, in dealing with the problem now before us, it is said on p. 57:

"Until this question is squarely presented to the Supreme Court of the United States and a ruling had thereon, the question will have to be resolved on a case-to-case basis, each case depending on its own peculiar facts."

The case of *Higgins* v. *Carr Bros., Co.*, 317 U. S. 572, 574, 87 L. ed. 468, dealt with merchandise imported from one state to another to be sold at wholesale in the local market. The United States Supreme Court stated that:

"But here, unlike *Walling* v. *Jacksonville Paper Co.*, there is nothing in the record before us to support those statements nor to impeach the accuracy of the conclusion of the Supreme Judicial Court of Maine that when the merchandise coming from without the state was unloaded at respondent's place of business its 'interstate movement had ended.' "

In *Walling* v. *Consumers Co.*, 149 F. 2d 626, it was decided that certain merchandise, which was subject to interstate transportation, did not reach a point of rest in the state to which it was destined until it was unloaded and deposited in the consignee's yard and that the employees who were engaged in the unloading were covered by the act. See also *Clyde* v. *Broderick*, 144 F. 2d 348. Contrary to this, it has been decided that upon receipt and acceptance of a shipment by a wholesaler consignee the interstate transportation had terminated and any subsequent unloading does not come

within the coverage of the Fair Labor Standards Act. *Martin* v. *Bouldin Fruit Co.*, 181 P. 2d 995.

As may be seen, there is evidently a conflict between the case of *Walling* v. *Consumers Co.*, and the case of *Martin* v. *Bouldin*, *supra*. The case of *Higgins* v. *Carr*, *supra*, does not help us to settle it because it merely says that when the goods were unloaded the interstate transportation *had* already ceased, without stating the exact moment when the interstate transportation had ended. In any event the aforesaid conflict is academic in this case, since here the goods had been unloaded and placed in defendant's warehouse when plaintiff handled them. In the light of the authorities cited herein, it is clear that when plaintiff handled the goods in question, they had ceased to be in commerce and therefore he was not engaged in commerce within the meaning of that term in the statute.

The case of *Walling* v. *L. Wiemann Co.*, 138 F. 2d 602, cert. denied in 321 U. S. 785, is quite similar in its pertinent part to the case at bar and supports our conclusion herein. In that case the merchandise coming from other states was brought by the carriers to defendant's warehouse—which had no unloading platform—and it was unloaded there. Then the warehousemen who did not intervene in the unloading, unpacked, checked, and placed the merchandise in the appropriate place inside the warehouse, to be transferred from there to defendant's retail stores. The United States Court of Appeals for the Seventh Circuit decided that the lower court was right in concluding that interstate transportation terminated as soon as the merchandise was unloaded in defendant's warehouse and that the warehousemen were not "engaged in commerce" under the Fair Labor Standards Act.[4] See also, *Walling* v. *Goldblatt Bros.*, 128 F. 2d 778, and *Walling* v. *Bridgeport Tobacco Co.*, 57 F. Supp. 429; 149 A.L.R. 386, 387.

---

[4] In the case of *Walling* v. *L. Wiemann Co.*, defendant operated an intrastate chain of retail stores and used the warehouse for storing the

■ The lower court considers of great importance an opinion of the Federal Wage and Hour Division delivered on August 31, 1945.[5] This opinion states as follows:

"Although the question as to the point where interstate commerce ends is one whose answer necessarily depends on the facts of the particular case, I believe it can be said that normally, the destination intended for goods received for storage and subsequent distribution in intrastate commerce would not be the first place at which goods are set after unloading but would be the place, such as shelves or storage bins . . . Moreover, it is my opinion that the checking of out-of-state goods on the unloading platform and the removal of the goods from the platform into the interior of the warehouse are usually so immediately and closely connected with their receipt and unloading, the employees engaged in such activities, including the storing of the goods on the shelves or bins, are engaged in interstate commerce within the coverage of the act."

However, we must point out that that opinion was set aside by the same Division on July 11, 1947. See Code of Federal Regulations, Title 29, § 776.0 (c) (3 Labor Law Reporter, § 24,102.001, p. 21,037.) In any event, we are not in agreement with that opinion in so far as it tends to indicate that in a case like the present one the goods imported by defendant continue "in commerce" when handled by plaintiff. The opinions of the Wage and Hour Division on the interpretation of the Fair Labor Standards Act

---

merchandise to be redelivered to the other stores. The court also based its decision, that the employees engaged in unloading were not covered by the Act, on the fact that they were exempted as employees of a retail store within the meaning of § 13(a)(2), of the Fair Labor Standard Act, 29 U.S.C.A. 213(a)(2). As to this point this case was overruled by *Phillips Co.* v. *Walling*, 324 U. S. 490, 89 L. Ed. 1095. There it was decided that in the cases of retail chain stores there is an integration between those performing wholesale and retail duties, and that the employees of the warehouse which supplies those stores are not employees of a retail store under § 13(a)(2), *supra*. However, when considering the problem which is now before us, we agree with appellant that value of that case as a precedent herein remains unaltered.

[5] This opinion appears in *Labor Equipment*, Vol. 1, § 10,171.1, p. 10,200.

542

have persuasive force as an expression of the view of those experienced in the administration of the Act—*Overnight Motor Co.* v. *Missel,* 316 U. S. 572, 580, 86 L. ed. 1682—but it does not mean that the courts are forced to follow such interpretations. Code of Federal Regulations, Title 29, § 776.0 (*a*) (3 Labor Law Reporter, § 24,102.001, p. 21,026) ; *Overnight Motor Co.* v. *Missel, supra; McComb* v. *Shepard Niles Crane & Hoist Corp.,* 171 F. 2d 69, 72.

■ It is also convenient to point out that the findings of the lower court show that defendant had a retail store and that the warehouse where plaintiff worked was used exclusively for supplying it with goods. Section 13 (*a*) (2) of the Fair Labor Standards Act, 29 U.S.C.A. 213 (*a*) (2) excludes retail store employees from the application of the Act, as follows:

"Exemptions :
"(*a*) The provisions of § § 206 and 207 of this title shall not apply with respect to (1) . . . (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; . . ."

The exemption contained in § 13 (*a*) (2), *supra,* is applicable to all the employees in an exempt establishment, independently of whether or not they work in a warehouse which is separated physically from the place of business [6] where goods are sold or services rendered. That Section was amended in 1949 [7] to increase its scope. Originally the

---

[6] In the case at bar it is not disclosed by the findings of fact of the lower court whether the warehouse was located in the same building as the store. However, it is implied from "An Answer to Petitioner's Interrogatories" that the warehouse is located at a distance of several blocks from defendant's principal establishment.

[7] Act 393 of October 26, 1949, 81st Congress, first session, 63 U. S. Statutes at Large, p. 910, chapter 736.

exemption only covered employees "in any retail or service establishment." As a result of the amendment the word "in" was changed to "by." That change brought within the scope of the exemption employees engaged in work off the premises of the establishment.[8] In 3 Labor Law Reporter 22,095, it is stated on page 22,097 that:

"However, since the exemption applies to every employee employed 'by' an exempt retail or service establishment, it is applicable to employees of an exempt retail or services establishment working in a warehouse operated by and servicing such establishment exclusively, whether or not the warehouse operation is conducted in the same building as the selling or servicing activities."

The specific occupation in which plaintiff herein was engaged in no way changes the situation for the purpose of determining whether § 13 (a) (2), *supra*, is applicable. Code of Federal Regulations, Title 29, § 779.3 (a and b), (3 Labor Law Reporter, § 24,105.03, p. 21,080) ; *Soleim* v. *Tuverson*, 7 Labor Cases, § 61,825, pp. 65,338, 65,339; *Lundin* v. *Chatanooga Transportation Co., Inc.*, 7 Labor Cases, § 61,838, p. 65,368.

In view of the above considerations, we may conclude that if defendant's establishment was a retail store, pursuant to the meaning of this term in § 13 (a) (2), *supra*, the Act was not applicable to plaintiff. But such fact is not disclosed by the findings of fact of the trial court and we do not have before us the transcript of the evidence.[9] It could be argued, however, that said fact may be inferred from the finding of the lower court that such establishment was a "retail store", since it is logical to conclude that the lower court considered § 13 (a) (2) in reaching that conclusion. Nevertheless, we

---

[8] Under the previous provision it had also been decided that the exception was applicable to employees of an exempt establishment working in a warehouse operated by such establishment. *Burhans* v. *Montgomery Ward & Co.*, 110 F. Supp. 184.

[9] The parties accepted by stipulation the facts stated by the trial court in its findings of fact. See footnote No. 2.

544

prefer to ignore this argument as a basis for deciding that plaintiff was not within the coverage of the Fair Labor Standards Act, since we can reach the same conclusion on the basis that the goods imported by defendant had ceased to be in commerce when plaintiff handled them and that in performing the work he did, the latter was not engaged in commerce or in the production of goods for commerce.[10]

Because of the above conclusion it is unnecessary to discuss the second error assigned.

The judgment appealed from will be reversed and the complaint dismissed.[11]

---

[10] *Cf. Rivera* v. *Central Aguirre*, 4 Labor Cases, § 60,526, p. 61,539; *Williams* v. *Mosier's Inc.*, 6 Labor Cases, § 61,277, p. 63,783.

[11] As the trial court held, plaintiff was paid the wage fixed by the applicable local wage decrees and was compensated at twice the regular rate for all the extra hours worked in excess of eight hours a day or 44 hours a week.