JUAN ORTIZ, demandante y apelado, *v.* SUCRS. DE A. MAYOL & CO., INC., demandados y apelantes.

Número 11470.
*Sometido:* 2 de junio de 1955. *Resuelto:* 29 de julio de 1955.

*Damián Monserrat, Jr., Gabriel de la Haba y Rafael Baragaño, Jr.,* abogados de la apelante; *Ramón Humberto Vargas,* abogado del apelado; *Orlando J. Antonsanti y Pascual Amado Rivera,* como *amici curiae.*

El Juez Asociado Señor Marrero emitió la opinión del Tribunal.

El apelado instó querella contra Sucrs. de A. Mayol & Co., Inc., reclamando a ésta la suma de $841.08 por concepto de salarios que alegadamente se le adeudaban, una suma igual por concepto de penalidad, así como honorarios de abogado. Alegó en síntesis: que la demandada se dedicaba a la importación de mercancías de ultramar y a la venta de las mismas al por mayor en Puerto Rico; que el demandante trabajó para la demandada en labores directamente relacionadas con el comercio interestatal desde el año 1927 hasta el 11 de abril de 1954; que durante el período comprendido entre el 27 de agosto de 1951 hasta el 11 de abril de 1954 él trabajó para la demandada no menos de 516 horas extras, las cuales no le fueron compensadas y por las que la deman-

dada le adeuda $670.80; que durante el mismo período la demandada le pagó a razón de 62¢ por hora, en vez del mínimo de 65¢ que requiere la ley y que por tal razón le adeuda $170.28.

En su contestación, la demandada admitió que se dedicaba a la importación de mercancía de ultramar y que el demandante trabajó para ella durante el período alegado en la demanda; alegó que el trabajo del demandante se relacionaba con el comercio local, y negó los demás hechos esenciales de la demanda. Sostuvo además que la demanda no aduce hechos constitutivos de causa de acción, por no exponer hecho alguno que demuestre que las actividades del demandante en su empleo estaban relacionadas con el comercio interestatal y, por vía de defensa, que la alegada reclamación del demandante estaba prescrita en cuanto a los salarios relacionados con trabajos realizados con anterioridad al 17 de mayo de 1952.

Visto el caso en sus méritos, el tribunal a quo resolvió que él demandante trabajó con la demandada desde el 27 de agosto de 1951 hasta el 15 de abril de 1954 (sic) y que durante ese período estaba cubierto por la Ley Federal de Normas Razonables del Trabajo, 29 U.S.C.A., secs. 201 y siguientes. No obstante ello, resolvió que la reclamación del demandante estaba prescrita en cuanto a lo reclamado por él por salarios devengados con anterioridad al 17 de mayo de 1952. En lo que respecta a la reclamación por salarios a partir de esa fecha, el tribunal inferior determinó que la demandada le debía al demandante $413.41, luego de hacer un cómputo de los salarios que debió haber recibido éste a la luz de la Ley de Normas Razonables del Trabajo. En vista de ello, dictó sentencia condenando a la demandada a pagar al demandante dicha suma, más una suma igual por concepto de daños líquidos y $500 para honorarios de abogado. No conforme con dicha sentencia la demandada apeló ante este Tribunal, señalando los siguientes errores:

"1. El tribunal inferior erró al resolver que las actividades del apelado en el desempeño de su empleo con la apelante, consistentes en recoger mercancía depositada dentro de un almacén propiedad de la apelada (sic) por un contratista independiente, romper el paquete original y clasificar la mercancía en ocasiones, y mover y estibar la mercancía dentro del almacén para colocarla en el sitio que correspondía, constituyen actividades relacionadas con el comercio interestadual y que, en su consecuencia, el apelado está cubierto por las disposiciones de la Ley de Normas Razonables del Trabajo.

"2. El tribunal inferior erró al condenar a la apelante a pagar al apelado la suma de $500.00 por concepto de honorarios de abogados."

## Discusión de Errores

La Ley de Normas Razonables del Trabajo cubre en general a aquellos empleados que están "ocupados en el comercio" (*engaged in commerce*) o en la producción de mercancía para el comercio.(¹)   29 U.S.C.A., secs. 206 y 207. El término "comercio" de acuerdo con la definición que aparece en la misma Ley, incluye el comercio interestatal, el comercio de países extranjeros a los estados y el comercio de los estados a países extranjeros, entendiéndose que la palabra estado incluye "cualquier estado de los Estados Unidos o el Distrito de Columbia o cualquier territorio o posesión de los Estados Unidos."   Ley de Normas Razonables del Trabajo, art. 3 *(b y c)*, 29 U.S.C.A., sec. 203 *(b y c)*.

El tribunal a quo determinó que el demandante-apelado estaba "ocupado en el comercio" mientras trabajaba con la demandada y que por tal razón estaba cubierto por la Ley de Normas Razonables del Trabajo.   Para respaldar su determinación se basó entre otras, en las siguientes conclusiones de hechos:(²)

---

(¹) El mero hecho de que las actividades realizadas por un empleado afecten el comercio interestatal o afecten "el comercio" no implica necesariamente que dicho empleado esté cubierto por la Ley de Normas Razonables del Trabajo.  *Walling* v. *Jacksonville Paper Co.*, 317 U. S. 564, 87 L. Ed. 460; *Kircshbaum Co.* v. *Walling*, 316 U. S. 517, 86 L. Ed. 1638.

(²) En este caso no hay conflicto sobre los hechos.  Las partes estipularon que los hechos expuestos por el juez del tribunal a quo en sus conclusiones de hechos son correctos.

"    .        .        .        .        .        .        .

"5. La demandada se dedicaba a la importación de mercancía de ultramar para su venta en Puerto Rico; esa mercancía era enviada directamente a la demandada y una vez depositada en los muelles era llevada a la demandada por un contratista independiente, quien la colocaba dentro del almacén de la demandada.

"6. Las labores del demandante consistían en mover y estibar la mercancía dentro del almacén, colocándola en el sitio correspondiente una vez ésta era dejada allí por el contratista independiente. Dicho contratista nunca rompía los paquetes originales en que llegaba la mercancía; él la colocaba en cualquier espacio dentro del almacén que hubiera disponible en el momento en que era traída de los muelles, ya que no existía un lugar o plataforma especialmente destinado para el contratista depositarla.

"7. En muchas ocasiones, el demandante rompía el paquete original en que llegaba la mercancía y entonces la clasificaba y colocaba en el lugar al cual correspondía dentro del almacén. La mercancía así colocada pasaba entonces a formar parte de las existencias de la demandada, para envío, cuando surgiera la necesidad, a la tienda de ventas al por menor que opera dicha demandada en San Juan.

"    .        .        .        .        .        .        .

"9. Ocasionalmente, el demandante se dedicaba a otras labores dentro de su empleo, pero sus funciones principales son las enumeradas en las conclusiones que preceden. No existía segregación entre el tiempo dedicado por el demandante a las labores regulares y el tiempo dedicado a otras labores. El demandante no intervenía en forma alguna con la transportación desde el muelle al almacén ni con la descarga de la mercancía."

La apelante sostiene que el demandante no está cubierto por la referida Ley, ya que cuando él intervenía con la mercancía ésta había dejado de estar "en el comercio" (*in commerce*) según se usa dicho término en el estatuto. Arguye que la mercancía cesaba de estar "en el comercio" desde el momento en que los contratistas independientes descargaban la misma en su almacén. Por el contrario, el apelado sostiene, y así concluyó el tribunal inferior, que la mercancía en cuestión no dejaba de estar "en el comercio" mientras era transportada por el demandante y otros compañeros de tra-

bajo, del sitio en que la dejaba el contratista independiente (porteador) hasta el sitio destinado para ella en el almacén de la demandada.

Los empleados "ocupados en el comercio" de acuerdo con la Ley de Normas Razonables del Trabajo son aquéllos que participan en la transportación, trasmisión o comunicación interestatal o en el comercio de los Estados Unidos a países extranjeros o de países extranjeros a los Estados de la Unión. 3 *Labor Law Reporter*, sec. 25,150, pág. 21,731. No hay duda alguna de que de tener razón la apelante en su contención, tendría que concluirse que al demandante no le era aplicable la Ley de Normas Razonables del Trabajo. Cuando se trae mercancía de otros estados o del extranjero, la transportación de ella está cubierta por el estatuto hasta tanto la mercancía llega a un punto de descanso (*point of rest*) dentro del estado, es decir cuando llega a su destino. Ése es el punto donde deja de estar "en el comercio." Cualquier transportación posterior dentro del estado es una de carácter local y no está reglamentada por el estatuto. Véanse 3 *Labor Law Reporter*, sec. 25,150, pág. 21,732, y Wecht, *Wage Hour Law*, ed. 1951, pág. 55.

■ La jurisprudencia interpretando la Ley de Normas Razonables del Trabajo establece claramente que salvo ciertas excepciones, (3) cuando se importa mercancía de un estado a otro, o de un país extranjero, para ser vendida en el comer-

---

(3) En *Walling* v. *Jacksonville Paper Co.*, supra, el Tribunal Supremo Nacional decidió que cuando el importador compra mercancía fuera del estado a base de órdenes previas de ciertos clientes o para suplirla a clientes específicos de acuerdo con un contrato o entendido previo, aquélla continúa en "el comercio" hasta tanto llega a manos del cliente para el cual viene destinada, y que esto es así independientemente de que la mercancía se lleve a un almacén del mayorista importador antes de entregársele al cliente. Ese caso también se pronuncia en el sentido de que lo dicho anteriormente tal vez se aplica a ciertos casos en que el mayorista compra mercancía anticipando la demanda de clientes específicos. Sin embargo, la situación aquí es distinta, ya que nada hay en los autos que indique que ra demandada importaba la mercancía a base de órdenes previas, para suplirla a clientes a virtud de contratos o entendidos anteriores, o anticipando la demanda de clientes específicos.

cio local, aquélla cesa de estar en el comercio, de acuerdo con el estatuto, cuando es entregada y recibida por el importador y pasa a formar parte de su propiedad dentro del estado. Véase *Fleming* v. *Jacksonville Paper Co.*, 128 F.2d 395, modificado y confirmado en *Walling* v. *Jacksonville Paper Co.*, 317 U. S. 564, 87 L. Ed. 460; *Domenech* v. *Pan American Standard Brands*, 147 F.2d 994; Wecht, *Wage Hour Law*, supra.

Sin embargo, resulta algo complicado determinar a la luz de la jurisprudencia, el momento específico en que termina la transportación cubierta por la Ley. La obra de Wecht, supra, al referirse al problema que nos ocupa se expresa como sigue a la pág. 57:

"Hasta que esta cuestión sea abiertamente presentada al Tribunal Supremo de los Estados Unidos y éste dicte una resolución sobre la misma, ella tendrá que ser resuelta a base de caso por caso, dependiendo cada uno de ellos de sus propios hechos específicos."

En *Higgins* v. *Carr Bros., Co.*, 317 U. S. 572, 574, 87 L. Ed. 468, se trataba de mercancía importada de un estado a otro para su venta al por mayor en el comercio local. El Tribunal Supremo Nacional se expresa en él así:

"Pero aquí, distinto al caso de *Walling* v. *Jacksonville Paper Co.*, no aparece nada en los autos que tenemos a la vista que sostenga semejantes manifestaciones ni que impugne la certeza de la conclusión del Tribunal Supremo de Justicia del Estado de Maine al efecto de que cuando la mercancía que vino de fuera del estado fué descargada en el sitio de negocio de la querellada su 'movimiento interestatal había terminado.' "

En *Walling* v. *Consumers Co.*, 149 F.2d 626, se decidió que cierta mercancía que era objeto de transportación interestatal no llegaba a un punto de descanso dentro del estado a que estaba destinada hasta que era descargada y depositada en el patio (*yard*) del consignatario y que los empleados que realizaron la descarga estaban cubiertos por la Ley. Véase también, *Clyde* v. *Broderick*, 144 F.2d 348. Contrario a esto,

se ha decidido que cesa la transportación cubierta por el estatuto cuando el mayorista consignatario recibe la mercancía y la acepta y que la descarga posterior de ésta no está cubierta por la Ley. *Martin* v. *Boulding Fruit Co.*, 181 P.2d 995.

Como podrá verse, evidentemente existe un conflicto entre los casos de *Walling* v. *Consumers Co.*, y el de *Martin* v. *Bouldin*, supra. El caso de *Higgins* v. *Carr*, supra, no ayuda a resolverlo, pues meramente dice que cuando fué descargada la mercancía ya *había* cesado su transportación interestatal, sin precisar exactamente el momento en que tal transportación había terminado. Mas sea ello como fuere, el referido conflicto resulta ilusorio en este caso, puesto que aquí la mercancía había sido descargada y colocada en el almacén de la demandada cuando el demandante intervino con ella. A la luz de la jurisprudencia citada es claro que cuando el demandante manipulaba la mercancía en cuestión, ésta había cesado de estar en el comercio, por lo cual él no estaba ocupado en el comercio (*engaged in commerce*), según se usa dicha frase en el estatuto.

El caso de *Walling* v. *L. Wiemann Co.*, 138 F.2d 602, cert. denegado en 321 U. S. 785, es bastante similar en su parte pertinente al de autos y respalda la conclusión a que aquí llegamos. En ese caso la mercancía proveniente de otros estados se traía por los porteadores al almacén de la demandada—que no tenía plataforma de descarga—y allí era descargada. Entonces los empleados del almacén, que no intervenían en la descarga, desempacaban la mercancía, la examinaban y la colocaban en los lugares destinados para ella en el almacén, para de allí ser más tarde trasladada a las diversas tiendas al por menor (*retail stores*) de la demandada. La Corte de Apelaciones de los Estados Unidos para el Séptimo Circuito resolvió que el tribunal inferior había estado en lo cierto al concluir que la transportación interestatal de la mercancía terminó tan pronto ésta fué descargada en el almacén de la demandada y que los empleados del refe-

rido almacén no estaban "ocupados en el comercio" bajo la Ley de Normas Razonables del Trabajo.(⁴)   Véanse también, *Walling* v. *Goldblatt Bros.*, 128 F.2d 778, y *Walling* v. *Bridgeport Tobacco Co.*, 57 F.Supp. 429; 149 A.L.R. 386, 387.

■ El tribunal a quo le da gran importancia a una opinión de la División de Horas y Salarios Federal emitida el 31 de agosto de 1945.(⁵)   Dicha opinión se expresa como sigue:

"Aunque la cuestión relativa al punto en que finaliza el comercio interestatal es una cuya contestación necesariamente depende de los hechos del caso específico, mi criterio es que puede decirse que de ordinario el destino escogido para mercancía recibida para su almacenaje y para su subsiguiente distribución en el comercio local no sería el primer sitio en que la mercancía es colocada después de ser descargada sino que sería un sitio como los aparadores o arcones de almacenaje. . . .  Además soy de opinión que la fiscalización o cotejo de mercancía proveniente de fuera del estado en la plataforma de descargue y el traslado de ella de esa plataforma al interior del almacén son cosas que de ordinario están tan inmediata y tan íntimamente conectadas con su recibo y descargue, que.los empleados dedicados a tales actividades, incluyendo el almacenaje de la mercancía en los aparadores o arcones, están ocupados en el comercio interestatal bajo las disposiciones de la ley."

(⁴) En el referido caso de *Walling* v. *L. Wiemann Co.*, la demandada operaba una cadena de tiendas al por menor dentro del estado y usaba el almacén en cuestión para suplir dichas tiendas.   El tribunal también basó su conclusión de que los empleados envueltos no estaban cubiertos por la ley, en que éstos estaban exentos por su carácter de empleados de un establecimiento de ventas al por menor.   Ley de Normas Razonables del Trabajo, sec. 13(a)(2), 29 U.S.C.A. 213(a)(2).   En cuanto a este aspecto el referido caso quedó revocado por el de *Phillips Co.* v. *Walling*, 324 U. S. 490, 89 L. Ed. 1095.   En éste se decide que en los casos de cadenas de tiendas de ventas al por menor hay una integración de las funciones de mayoristas y detallistas y que los empleados del almacén que surte dichas tiendas no son empleados de un establecimiento de ventas al por menor bajo la sec. 13(a)(2), supra.   Sin embargo, al considerar el problema que nos ocupa, convenimos con el apelante en que ello no altera el valor de dicho caso como precedente en el de autos.

(⁵) Esta opinión aparece en *Labor Equipment*, Vol. I, sec. 10,171.1, pág. 10,200.

Debemos señalar, sin embargo, que esa opinión fué dejada sin efecto por la propia División el 11 de julio de 1947. Véase *Code of Federal Regulations*, tít. 29, sec. 776.0 (*c*) (3 *Labor Law Reporter*, sec. 24,102.001, pág. 21,037.) Mas sea ello como fuere, no estamos de acuerdo con dicha opinión en cuanto tiende a indicar que en un caso como el presente la mercancía importada por la demandada continuaba "en el comercio" cuando era manipulada por el demandante. Las opiniones de la División de Horas y Salarios sobre la interpretación de la Ley de Normas Razonables del Trabajo tienen fuerza persuasiva, toda vez que exponen el criterio de personas con experiencia en la administración del estatuto—*Overnight Motor Co.* v. *Missel*, 316 U. S. 572, 580, 86 L. Ed. 1682—pero ello no significa que los tribunales queden obligados por tales interpretaciones. *Code of Federal Regulations*, tít. 29, sec. 776.0 *(a)* (3 *Labor Law Reporter*, sec. 24,102.001, pág. 21,036) ; *Overnight Motor Co.* v. *Missel*, supra; *McComb* v. *Shepard Niles Crane & Hoist Corp.*, 171 F.2d 69, 72.

■ Conviene también señalar que las conclusiones del tribunal a quo indican que la demandada poseía una tienda de ventas al por menor y que el almacén donde trabajaba el demandante se usaba exclusivamente para suministrar mercancía a dicha tienda. La sec. 13 (*a*) (2) de la Ley de Normas Razonables del Trabajo, 29 U.S.C.A. 213 (*a*) (2), excluye de la aplicación de dicha ley, a los empleados de establecimientos de ventas al por menor, así:

"Exenciones:

"(*a*) Las disposiciones de las secciones 206 y 207 de este título no se aplicarán a (1) ... (2) ninguna persona empleada por un establecimiento al por menor o de servicio, más del cincuenta por ciento de cuyo volumen anual de ventas o de servicios se realizan dentro del estado en que el establecimiento está situado. Un 'establecimiento al por menor o de servicio' significará un establecimiento cuyo volumen anual de venta de mercancía o de servicios prestados (o de ambos), en dólares, en un setenta y cinco por ciento no es para la reventa y en la indus-

tria específica de que se trata se le reconoce como una de ventas al por menor o de servicios; . . ."

La excepción contenida en la sec. 13(a) (2), supra, es aplicable a todos los empleados de un establecimiento exento, independientemente de que éstos trabajen o no en un almacén físicamente separado del edificio([6]) donde se lleven a cabo las ventas o se rindan los servicios. La referida sección fué enmendada en el año 1949([7]) para aumentar sus alcances. Anteriormente sólo cubría a los empleados "en un establecimiento de ventas al por menor o de servicios." Como resultado de la enmienda se sustituyó la palabra "por" en lugar de la palabra "en". Este cambio tuvo el efecto de incluir a todos los empleados de los establecimientos exentos, independientemente de que trabajen dentro del local de éstos.([8]) 3 *Labor Law Reporter* 22,095. Esta obra se expresa como sigue a la pág. 22,097:

"Empero, como la exención se aplica a toda persona empleada 'por' un establecimiento al por menor o de servicio exento, ella es aplicable a una persona que esté empleada en un establecimiento al por menor o de servicio exento, que trabaje en un almacén explotado por y que surta a tal establecimiento exclusivamente, ora tal almacén sea operado en el mismo edificio que aquél en que se efectúan las ventas o se prestan los servicios o no."

El trabajo específico que realizaba el demandante en este caso tampoco altera en nada la situación a los efectos de determinar si es aplicable la sec. 13 (a) (2), supra. *Code of Federal Regulations*, Tít. 29, sec. 779.3 (a y b), (3 *Labor*

---

([6]) En el caso de autos no aparece de las Conclusiones de Hechos del tribunal a quo si el almacén en cuestión estaba en el mismo edificio donde radicaba la tienda. Sin embargo, de una "Contestación al Interrogatorio Sometido por el Querellante" se desprende que dicho almacén está situado a varias cuadras de distancia del establecimiento principal de la demandada.

([7]) Ley 393 de 26 de octubre de 1949, Congreso 81, primera sesión, 63 U. S. Statutes at Large, pág. 910, capítulo 736.

([8]) También bajo la anterior disposición se había decidido que la excepción le era aplicable a empleados de un establecimiento exento que trabajaban en un almacén de éste, *Burhans* v. *Montgomery Ward & Co.*, 110 F. Supp. 184.

*Law Reporter*, sec. 24,105.03, pág. 21,080) ; *Soleim* v. *Tuverson*, 7 Labor Cases, sec. 61,825, págs. 65,338, 65,339; *Lundin* v. *Chatanooga Transportation Co., Inc.*, 7 Labor Cases, sec. 61,838, pág. 65,368.

En vista de las anteriores consideraciones podemos concluir que si la tienda de la demandada era un establecimiento de ventas al por menor, según se define este término en la sec. 13*(a)* (2), supra, el demandante estaba excluído de la aplicación de la ley. Mas tal extremo no aparece de las Conclusiones de Hechos del tribunal a quo y no tenemos ante nos la transcripción de la evidencia. (⁹) Podría argüirse, sin embargo, que ese hecho puede inferirse de la conclusión del tribunal inferior de que dicha tienda era una de "ventas al por menor", ya que es lógico concluir que dicho tribunal consideró la sec. 13 (*a*) (2) al llegar a dicha conclusión. No obstante, preferimos prescindir de este argumento como base para resolver que el demandante no estaba cubierto por la Ley de Normas Razonables del Trabajo, ya que podemos llegar a la misma conclusión fundándonos en que la mercancía importada por la demandada había cesado de estar en el comercio cuando el demandante intervino con ella y en que al realizar el trabajo que realizó, éste no estaba ocupado en el comercio o en la producción de mercancía para el comercio. (¹⁰)

Dada la conclusión anterior es innecesario discutir el segundo error señalado.

*Debe revocarse la sentencia apelada y declararse sin lugar la querella.* (¹¹)

---

(⁹) Las partes aceptaron por estipulación los hechos relatados por el tribunal a quo en sus conclusiones de hechos. Véase la nota 2.

(¹⁰) *Cf. Rivera* v. *Central Aguirre*, 4 Labor Cases, sec. 60,526, pág. 61,539; *Williams* v. *Mosier's, Inc.*, 6 Labor Cases, sec. 61,277, pág. 63,783.

(¹¹) Según concluyó el tribunal a quo, al demandante se le pagó el jornal prescrito por los decretos locales aplicables y se le compensó a razón de tiempo doble por todas las horas extras trabajadas en exceso de ocho horas diarias o de 44 horas a la semana.